UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------x
ALAN H. HAMILTON,

                    Plaintiff,

          -against-                                    **14 Civ. 0624 (VLB)**

NEWBURGH-BEACON BUS
CORPORATION, LEPRECHAUN LINES,
INC. AND JOHN DOE 1-10,

                    Defendants.
-------------------------------------------------------x

**MEMORANDUM OF LAW IN SUPPORT OF
MOTION TO DISMISS THE COMPLAINT
SUBMITTED BY DEFENDANTS
NEWBURGH-BEACON BUS CORPORATION
AND LEPRECHAUN LINES, INC.**

## <u>TABLE OF CONTENTS</u>

TABLE OF AUTHORITIES ...................................................................................... ii

PRELIMINARY STATEMENT .................................................................................1

FACTS ........................................................................................................................2

STANDARD OF REVIEW .........................................................................................4

ARGUMENT ..............................................................................................................5

POINT I   -  PLAINTIFF'S ADA CLAIM MUST BE DISMISSED BECAUSE HE
HAS FAILED TO FILE AN ADMINISTRATIVE CHARGE WITH THE
EEOC ...........................................................................................................5

POINT II   -  PLAINTIFF CANNOT ESTABLISH A PRIMA FACIE CASE OF
DISABILITY DISCRIMINATION ............................................................6

    A.    Plaintiff is Not a Qualified Individual With a Disability ................6
    B.    Plaintiff is Not Disabled Within the Meaning of the ADA ............8

POINT III   -  PLAINTIFF'S OVERTIME CLAIMS ARE BARRED BY THE MOTOR
CARRIER EXEMPTION  .......................................................................10

    A.    The Motor Carrier Exemption - Background .................................10
    B.    Requirements to Meet the Motor Carrier Exemption ...................12
    C.    Defendants Are Motor Carriers ....................................................14
    D.    Plaintiff's Work as a Driver Directly Affects the Safety of
Operation of Motor Vehicles .......................................................15
    E.    Plaintiff Engaged in Activities That Are Part of Interstate
Commerce .....................................................................................16

POINT IV   -  PLAINTIFF'S RETALIATION CLAIMS FAIL TO STATE A
CLAIM   .....................................................................................................23

CONCLUSION ..........................................................................................................25

110813.4 4/15/2014

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Abel v. S. Shuttle Servs., Inc.,*
    631 F.3d 1210 (11th Cir. 2011) (*per curiam*) ............................................................10, 13, 19

*Airlines Transp., Inc. v. Tobin,*
    198 F.2d 249 (4th Cir 1952) ...................................................................................................19

*Ashcroft v. Iqbal,*
    556 U.S. 662, 129 S. Ct. 1937 (2009) ......................................................................................4

*Baez v. Wells Fargo Armored Service Corp.,*
    938 F.2d 180 (11th Cir. 1991) (per curiam) ...........................................................................18

*Bell Atlantic Corp. v. Twombly,*
    550 U.S. 544 (2007) ..................................................................................................................4

*Benson v. Universal Ambulance Serv., Inc.,*
    675 F.2d 783 (6th Cir. 1982) ..................................................................................................15

*Bilyou v. Dutchess Beer Distributors Inc.,*
    300 F.3d 217 (2d Cir. 2002) ............................................................................10, 11, 12, 16, 17

*Blue Tree Hotels Inv. (Can.), Ltd. v. Starwood Hotels & Resorts Worldwide, Inc.,*
    369 F.3d 212 (2d Cir. 2004) ....................................................................................................20

*Bril v. Dean Witter, Discover & Co.,*
    986 F. Supp. 171 (S.D.N.Y. 1997) ............................................................................................6

*Brooks v. Halstead Comms., Ltd.,*
    620 F. Supp. 2d 193 (D. Mass. 2009) .....................................................................................15

*Buckner v. United Parcel Serv., Inc.,*
    2012 WL 1596726 (E.D.N.C. 2012) ........................................................................................14

*Burlington Northern, Inc. v. Weyerhaeuser Co.,*
    719 F.2d 304 (9th Cir. 1983) ..................................................................................................16

*Burton v. Metropolitan Transit Authority,*
    244 F. Supp.2d 252 (S.D.N.Y. 2003) ......................................................................................8, 9

*Cardo v. Arlington Ctr. Sch. Dist.,*
    473 Fed. Appx. 21 (2d Cir. 2012) .............................................................................................9

110813.4 4/15/2014

*Dauphin v. Chestnut Ridge Transp., Inc.*,
   544 F. Supp. 2d 266 (S.D.N.Y. 2008)............................................................................11

*Eley v. Sprint PCS*,
   2002 WL 1963293 (S.D.N.Y. 2002)..................................................................................6

*Eschmann v. White Plains Crane Service*,
   2014 U.S. Dist. LEXIS 38580 (E.D.N.Y. 2014)..............................................................24

*Friedman v. Consolidated Edison Co.*,
   1999 WL 511962 (S.D.N.Y. 1999)....................................................................................7

*Garcon v. Starwood Hotel & Resorts Worldwide*,
   2013 U.S. Dist. LEXIS 20079 (S.D.N.Y. 2013)................................................................5

*Gorzynski v. JetBlue Airways Corp.*,
   596 F.3d 93 (2d Cir. 2010)..............................................................................................23

*Hammon v. Keyspan Energy*,
   349 Fed. Appx. 629 (2d Cir. 2009)....................................................................................9

*Harris v. Mills*,
   572 F.3d 66 (2d Cir. 2009)................................................................................................4

*Hayden v. Bowen*,
   404 F.2d 682 (5th Cir. 1968)...........................................................................................19

*Henzel v. Del. Otsego Corp.*,
   285 F. Supp. 2d 271 (N.D.N.Y. 2003)...............................................................................8

*Hill v. Napoli*,
   2014 U.S. Dist. LEXIS 44018 (W.D.N.Y. 2014)...............................................................3

*Jackson v. N. Y. Transit & Roger Toussant*,
   2005 U.S. Dist. LEXIS 25111 (E.D.N.Y. 2005)................................................................5

*Jaramillo v. Garda, Inc.*,
   2012 WL 4955932 (N.D. Ill. 2012)..................................................................................15

*Joseph v. HDMJ Rest., Inc.*,
   2013 WL 4811225 (E.D.N.Y. 2013)..................................................................................9

*Kalyanaram v. Am. Ass'n of Univ. Professors at N.Y. Inst. of Tech., Inc.*,
   742 F.3d 42 (2d Cir. 2014)................................................................................................3

*Kassner v. 2nd Ave. Delicatessen Inc.*,
   496 F.3d 229 (2d Cir. 2007)..............................................................................................4

iii

*Kasten v. Saint-Gobain Performance Plastics Corp.*,
   131 S. Ct. 1325 (2011) ................................................................................23, 24

*Khan v. IBI Armored Servs., Inc.*,
   474 F. Supp. 2d 448 (E.D.N.Y. 2007) ...........................................................11

*King v. Town of Wallkill*,
   302 F. Supp. 2d 279 (S.D.N.Y. 2004) ...............................................................7

*Klitzke v. Steiner Corp.*,
   110 F.3d 1465 (9th Cir. 1997) ......................................................................10

*Lambert v. Genesee Hosp.*,
   10 F.3d 46 (2d Cir. 1993) ..............................................................................23

*Levinson v. Spector Motor Service*,
   330 U.S. 649 (1947) ................................................................................11, 12

*Manley v. Utzinger*,
   2011 WL 2947008 (S.D.N.Y. 2011) ..............................................................20

*Marshall v. Victoria Transp. Co., Inc.*,
   603 F.2d 1122 (5th Cir. 1979) ................................................................18, 19

*Mary Jo C. v. New York State & Local Ret. Sys.*,
   707 F.3d 144 (2d Cir. 2013) ............................................................................8

*Masson v. Ecolab, Inc.*,
   2005 WL 2000133 (S.D.N.Y. 2005) ..............................................................11

*McGee v. Corp. Express Delivery System*,
   2003 WL 22757757 (N.D. Ill. 2003) .............................................................15

*McGuiggan v. CPC Intern'l, Inc.*,
   84 F. Supp. 2d 470 (S.D.N.Y. 2000) .............................................................13

*Merchants Fast Motor Lines, Inc. v. ICC*,
   528 F.2d. 1042 (5th Cir. 1976) ......................................................................16

*Montesano v. Westgate Nursing Home, Inc.*,
   956 F. Supp. 2d 417 (W.D.N.Y. 2013) ............................................................9

*Morgan v. Future Ford Sales*,
   830 F. Supp. 807 (D. Del. 1993) ...................................................................25

*Morris v. McComb*,
   332 U.S. 422 (1947) ......................................................................................22

110813.4 4/15/2014

*Mullins v. City of New York*,
626 F.3d 47 (2d Cir. 2010)................................................................23

*Peraro v. Chemlawn Servs. Corp.*,
692 F. Supp. 109 (D. Conn. 1988).....................................................11

*Poindexter v. EMI Record Grp. Inc.*,
2012 WL 1027639 (S.D.N.Y. 2012)....................................................8

*Ramirez v. New York City Bd. of Educ.*,
481 F. Supp. 2d 209 (E.D.N.Y. 2007) ................................................6

*Reyes v. City Univ. of N.Y.*,
2007 WL 2186961 (S.D.N.Y. 2007)....................................................4

*Reynolds v. Town of Suffield*,
2012 WL 3135896 (D. Conn. 2012) ....................................................9

*Ruotolo v. City of New York*,
514 F.3d 184 (2d Cir. 2008)...............................................................4

*Ryan v. Best Buy Co.*,
2009 U.S. Dist. LEXIS 88858 (W.D.N.Y. 2009) ...............................6

*Salazar v. Bowne Realty Assocs.*,
796 F. Supp. 2d 378 (E.D.N.Y. 2011) ...............................................23

*Seever v. Carols Corp.*,
528 F. Supp. 2d 159 (W.D.N.Y. 2007) ..............................................25

*Shannon v. N.Y. City Transit Auth.*,
332 F.3d 95 (2d Cir. 2003).................................................................6

*Sista v. CDC Ixis North America, Inc.*,
445 F.3d 161 (2d Cir. 2006)...............................................................6

*Turk v. Buffets Inc.*,
940 F. Supp. 1255 (N.D. Ill. 1996) ...................................................10

*TZ Manor, LLC v. Daines*,
2011 U.S. Dist. LEXIS 109597 (S.D.N.Y. 2011)................................5

*United States v. Capital Transit Company*,
338 U.S. 286 (1949)..........................................................................18

*Walters v. American Coach*,
*supra,* 575 F.3d at 1227 ..........................................................11, 16, 18

110813.4 4/15/2014

*Watkins v. Ameripride Servs.*,
   375 F.3d 821 (9th Cir. 2004) .................................................................16

*Wells v. Fedex Ground Package Sys.*,
   2013 U.S. Dist. LEXIS 139145 (E.D. Mo. 2013) ...................................15

*Weslowski v. Zugibe*,
   2014 U.S. Dist. LEXIS 44041 (S.D.N.Y. 2014) ......................................3

*Wilkie v. The Golub Corp.*,
   2013 U.S. Dist. LEXIS 136099 (N.D.N.Y. 2013) .....................................8

**Statutes**

49 U.S.C. §13102(12) (2004) ........................................................................14

49 U.S.C. § 31502(a), (b)(2) ..........................................................................12

Age Discriminaiton in Emplyment Act, 29 U.S.C § 621 *et seq.* .....................5

Americans With Disabilities Act, 42 U.S.C. §12101 *et seq.* ................. *passim*

Fair Labor Standards Act, 29 U.S.C. §201 *et seq.* ............................... *passim*

New York Labor Law ..........................................................................1, 2, 23

Motor Carrier Act, 49 U.S.C. § 31502.............................10, 11, 12, 13, 22

SAFETEA–LU Technical Corrections Act of 2008 ......................................15

**Other Authorities**

29 C.F.R. § 782.1(a).......................................................................................10

29 C.F.R. § 782.2 ...........................................................................................12

29 C.F.R. § 782.3 ...........................................................................................15

29 CFR §782.7................................................................................................21

Rule 12(b)(6) of the Federal Rules of Civil Procedure.............................1, 3, 4

110813.4 4/15/2014

# PRELIMINARY STATEMENT

Defendants, Newburgh-Beacon Bus Corporation, and Leprechaun Lines, Inc. ("Defendants"), submit this Memorandum of Law in support of their motion to dismiss the Complaint pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure.

In this action, Plaintiff alleges that he was terminated from his position as a bus driver based on his disability in violation of the Americans With Disabilities Act ("ADA"), 42 U.S.C. §12101 *et seq*. He also claims that he was not paid overtime in violation of the Fair Labor Standards Act ("FLSA"), 29 U.S.C. §201 *et seq*. and New York Labor Law ("Labor Law"). Plaintiff also claims that he was subjected to unlawful retaliation in violation of the FLSA and Labor Law because of his complaints to his employer about not being paid overtime.

Defendants seek dismissal of the Complaint for several reasons.

## Claims Under the Americans With Disabilities Act

First, Plaintiff's ADA claim is barred by his failure to file a charge of discrimination with the Equal Employment Opportunity Commission ("EEOC"). The filing of such a charge is a condition precedent to bringing a court action.

Second, even if Plaintiff could pursue a claim under the ADA, he is unable to make out a prima facie case of disability discrimination. Plaintiff's own Complaint (Complaint ¶28), references a doctor's note that he provided to the Defendants. The note categorically states that he[, a bus driver,] was unable to drive a commercial motor vehicle. Thus, as a matter of law, Plaintiff is not a qualified individual with a disability.

Third, by his own admission, Plaintiff is not disabled as defined by the ADA. Plaintiff claims he is capable of performing all other jobs besides driving a commercial vehicle. Thus,

because his condition does not preclude him from a broad range of positions, he is likewise not disabled within the meaning of the ADA.

### Fair Labor Standards Act and Labor Law Claims

Plaintiff's FLSA claims fare no better. As a shuttle bus driver transporting passengers to and from Stewart International Airport, the Rt. 17K Park & Ride lot (which is a bus terminal for Coach USA/Short Line that provides bus service to New Jersey and elsewhere) and Beacon Metro North Train Station, Plaintiff is covered by the Motor Carrier Exemption, 29 U.S.C. § 213(b)(1), and therefore is not entitled to overtime pay. Likewise, the Motor Carrier exemption is recognized by the Labor Law. *See* 12 New York Codes, Rules and Regulations ("NYCRR") § 142-2.

Finally, the FLSA retaliation claims are baseless as well. It is undisputed that Plaintiff's employment ended when he advised Defendants (through his own physician's note) that he was physically unable to work as commercial bus driver. In light of his admitted inability to work as a driver, his employment ended at that time. Moreover, as a matter of law, the FLSA retaliation provisions do not protect complaints by employees to their employers, i.e., Plaintiff did not engage in any protected activity. Further, Plaintiff's inability to drive a bus as indicated by Plaintiff's own physician, was the reason Plaintiff's employment ended.

In light of the foregoing, the Complaint should be dismissed in its entirety.

## FACTS

Plaintiff was employed by the Defendants as a shuttle bus driver from June 2004 – October 2013. (Complaint ¶ 15). Plaintiff's shuttle route ran "between Stewart International Airport, Downtown Newburgh, a park and ride location on New York State Route 17K and the Beacon Metro North Station." (Complaint ¶ 13).

2

Like all bus drivers, Plaintiff was required to undergo an annual physical examination required by the United States Department of Transportation (Complaint ¶ 19). In October 2012 Plaintiff attended his annual physical examination. The physician who examined Plaintiff stated that "he needed to go to his personal physician to obtain a letter that affirmatively stated that Plaintiff could safely operate a commercial vehicle." (Complaint ¶26).

Thereafter, Plaintiff saw his personal physician who categorically stated that Plaintiff could not safely drive a commercial vehicle. The note states as follows:

> To whom it may concern,
>
> Ref – Alan Henry Hamilton, vetran [sic] was examined by me today, he has COPD, OSAS on CPAP, which has been documented, His other DX include ASHD, NTN Physically he is capable of working in any other job other than driving commercial vehicles.
>
> Thank You.
>
> Akhaya K. Das, M.D.

(Exhibit 1) (emphasis added).[1]

Plaintiff alleges that after he failed to produce documentation showing he was capable of working, he was terminated. (Complaint ¶ 29). Plaintiff also alleges he was terminated because of his complaints to his employer about not being paid overtime. (Complaint ¶¶ 25, 29).

---

[1] Even on this motion to dismiss, the Court may consider Dr. Das' note because "[w]hen presented with a Rule 12(b)(6), the court may consider documents that are referenced in the complaint, documents that the plaintiff relied on in bringing suit and that are either in the plaintiff's possession or that the plaintiff knew of and relied on when bringing suit, or matters of which judicial notice may be taken." *Hill v. Napoli*, 2014 U.S. Dist. LEXIS 44018 * 16-17 (W.D.N.Y. 2014) *citing Chambers v. Time Warner, Inc.*, 282 F.3d 147, 152-53 (2d Cir. 2002).   *See also Weslowski v. Zugibe*, 2014 U.S. Dist. LEXIS 44041 (S.D.N.Y. 2014) *5 n.1 ("[b]ecause Plaintiff's resignation letter was referenced in and is integral to the Complaint, the Court will consider it in deciding the Motion To Dismiss"). "In ruling on a 12(b)(6) motion, . . . a court may consider the complaint[,]. . . any written instrument attached to the complaint as an exhibit[,] or any statements or documents incorporated in it by reference," as well as "matters of which judicial notice may be taken, and documents either in plaintiffs' possession or of which plaintiffs had knowledge and relied on in bringing suit." *Kalyanaram v. Am. Ass'n of Univ. Professors at N.Y. Inst. of Tech., Inc.*, 742 F.3d 42, 44 n.1 (2d Cir. 2014). The letter is specifically referenced in paragraph 28 of the complaint.

3

On January 31, 2014 Plaintiff filed a complaint in this action in the United States District Court for the Southern District of New York.

## STANDARD OF REVIEW

*Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007), as amplified by *Ashcroft v. Iqbal*, 556 U.S. 662, 129 S. Ct. 1937 (2009), sets forth the standard applicable for motions to dismiss. *See, e.g.*, *Ruotolo v. City of New York*, 514 F.3d 184 (2d Cir. 2008) (strictly applying *Twombly* standard in employment discrimination cases and affirming dismissal of retaliation claim on a 12(b)(6) motion); *Reyes v. City Univ. of N.Y.*, 2007 WL 2186961, *5 (S.D.N.Y. 2007) (dismissing retaliation claim on a motion to dismiss in light of *Twombly* because Plaintiff "has not 'amplif[ied] his claim with some factual allegation in those contexts where some amplification is needed to render the claim plausible.'").

"In considering a motion to dismiss . . ., the court is to accept as true all facts alleged in the complaint." *Kassner v. 2nd Ave. Delicatessen Inc.*, 496 F.3d 229, 237 (2d Cir. 2007). However, under the *Twombly* standard, to survive a motion to dismiss, a complaint must allege "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. As the Court explained, "[w]hile a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the 'grounds' of his 'entitlement to relief' requires more than labels and conclusions, and a formulaic recitation of a cause of action's elements will not do." *Id.* at 555. Rather, a complaint's "factual allegations must be enough to raise a right to relief above the speculative level," and the line "between the factually neutral and the factually suggestive ... must be crossed to enter the realm of plausible liability." *Id.* at 555, 557 n. 5; *Iqbal*, 129 S. Ct. at 1949 ("Threadbare recitals of the elements of a cause of action supported by mere conclusory statements do not suffice."); *Harris v. Mills*, 572

F.3d 66, 72 (2d Cir. 2009) (same). "If a plaintiff 'ha[s] not nudged [his] claims across the line

from conceivable to plausible, [his] complaint must be dismissed.'" *TZ Manor, LLC v. Daines*,

2011 U.S. Dist. LEXIS 109597, at *17 (S.D.N.Y. 2011) (alteration in original) *quoting Twombly*,

550 U.S. at 570.

     Even accepting all of Plaintiff's allegations as true, as set forth herein, the Complaint

must be dismissed.

# ARGUMENT

## POINT I

### PLAINTIFF'S ADA CLAIM MUST BE DISMISSED BECAUSE HE HAS FAILED TO FILE AN ADMINISTRATIVE CHARGE WITH THE EEOC

    As a condition precedent for filing a Title VII, ADA or ADEA claim in federal court, "a plaintiff must first pursue available administrative remedies and file a timely complaint with the EEOC[,]" *Deravin v. Kerik*, 335 F.3d 195, 200 (2d Cir. 2003) (Title VII), *Harris v. City of New York*, 186 F.3d 243, 247 (2d Cir. 1999) (ADA); *Miller v. ITT Corp.*, 755 F.2d 20, 23 (2d Cir. 1985) (ADEA).

*Jackson v. N. Y. Transit & Roger Toussant*, 2005 U.S. Dist. LEXIS 25111, at *4 (E.D.N.Y.

2005). See *also Garcon v. Starwood Hotel & Resorts Worldwide*, 2013 U.S. Dist. LEXIS 20079

at *6 (S.D.N.Y. 2013) ("[a]s a condition precedent to filing ADA and ADEA claims in federal

court, a plaintiff must pursue available administrative remedies and file a timely complaint with

the EEOC or an administrative agency") *citing Francis v. City of New York*, 235 F.3d 763, 768

(2d Cir. 2000).

     Here the Complaint does not plead any facts suggesting that an administrative charge was

filed with the EEOC.  In fact no charge was filed.  As a result, the claims under the ADA must be

dismissed.

110813.4 4/15/2014

## POINT II

### PLAINTIFF CANNOT ESTABLISH A PRIMA FACIE
### CASE OF DISABILITY DISCRIMINATION

Even if Plaintiff had filed an EEOC charge, he would be unable to establish a prima facie

case of disability discrimination under the ADA.  To establish a prima facie case under the ADA:

> a plaintiff must show by a preponderance of the evidence that: (1)
> his employer is subject to the ADA; (2) <u>he was disabled within the
> meaning of the ADA</u>; (3) <u>he was otherwise qualified to perform
> the essential functions of his job, with or without reasonable
> accommodation</u>; and (4) he suffered adverse employment action
> because of his disability.

*Sista v. CDC Ixis North America, Inc.*, 445 F.3d 161, 169 (2d Cir. 2006) (emphasis added).  *See*

*also Ryan v. Best Buy Co.*, 2009 U.S. Dist. LEXIS 88858 at *14 (W.D.N.Y. 2009); *Ramirez v.*

*New York City Bd. of Educ.*, 481 F. Supp. 2d 209, 217 (E.D.N.Y. 2007).

### A.   Plaintiff is Not a Qualified Individual With a Disability

"To establish a prima facie case of disability discrimination, a plaintiff must prove that he

was a "qualified individual with a disability."  *Bril v. Dean Witter, Discover & Co.*, 986 F. Supp.

171, 173 fn. 2 (S.D.N.Y. 1997) (quoting *Kennedy v. Applause, Inc.*, 90 F.3d 1477 (9th Cir.

1996)) ("only a qualified individual with a disability can state a claim for discrimination").  A

"qualified individual" is defined as "an individual with a disability who with or without

reasonable accommodation can perform the essential functions of the employment position."  42

U.S.C. §12111(8); *see also Shannon v. N.Y. City Transit Auth.*, 332 F.3d 95, 99-100 (2d Cir.

2003) ("an individual is otherwise qualified for a job if she is able to perform the essential

function of their job with or without reasonable accommodation").  *Eley v. Sprint PCS*, 2002 WL

1963293 at *1 (S.D.N.Y. 2002) ("[i]f plaintiff's claimed disabilities were so serious that they

[prevent her] from working for the defendant altogether, the ADA provides no relief for

110813.4 4/15/2014

plaintiff" and terminating her employment cannot be discriminatory); *Friedman v. Consolidated Edison Co.*, 1999 WL 511962 at *10 (S.D.N.Y. 1999) ("[t]he term 'qualified individual with a disability' means an individual with a disability, who, with or without reasonable accommodation, can perform the essential functions of the employment position that such individual holds or desires.").

The determination of whether an employee is a "qualified individual with a disability" is to be made at the time of the adverse employment decision. *King v. Town of Wallkill*, 302 F. Supp. 2d 279, 289 (S.D.N.Y. 2004) ("Whether an employee is qualified is dependent on that employee's condition at the time of the alleged adverse employment action").

Here there is no dispute that Plaintiff is not a qualified person with a disability. Plaintiff's own physician documented that he could not drive a commercial vehicle. The physician stated in no uncertain terms that:

> To whom it may concern,
>
> Ref – Alan Henry Hamilton, vetran [sic] was examined by me today, he has COPD, OSAS on CPAP, which has been documented, His other DX include ASHD, NTN <u>Physically he is capable of working in any other job other than driving commercial vehicles.</u>
>
> Thank You.
>
> Akhaya K. Das, M.D.

(Emphasis added). A copy of Dr. Das' note is annexed as Exhibit 1 to the affidavit of Shawn Leo.[2]

---

[2] In his complaint, Plaintiff alleges that

> Plaintiff's physician attested that he was physically able to work but would not affirmatively state the Plaintiff could safely operate a commercial vehicle. Upon

Under these circumstances, there can be no claim of disability discrimination as Mr. Hamilton is clearly not qualified to drive a bus. *See Wilkie v. The Golub Corp.*, 2013 U.S. Dist. LEXIS 136099 (N.D.N.Y. 2013) (ADA claims dismissed as bus driver not medically cleared to drive is not a qualified individual with a disability). *Burton v. Metropolitan Transit Authority*, 244 F. Supp.2d 252 (S.D.N.Y. 2003) (bus driver taking prescription drugs held not qualified to drive based on risk associated with medication) . It is "axiomatic that an individual cannot perform the essential functions of a job if she is completely unable to work regardless of accommodation." *Henzel v. Del. Otsego Corp.*, 285 F. Supp. 2d 271, 276 (N.D.N.Y. 2003) (internal citations omitted). Doctor Das' note clearly states that Plaintiff cannot drive a commercial vehicle. Plaintiff's job was to operate a commercial vehicle. Therefore, he is not a qualified individual with a disability.

**B.      Plaintiff is Not Disabled Within the Meaning of the ADA**

Not only is the Plaintiff not qualified but his alleged condition is not even covered by the ADA. Dr. Das' note unequivocally states that Plaintiff is "capable of working in any other job other than driving commercial vehicles." Under these circumstances Plaintiff is not disabled within the meaning of the statute.

Disability under the ADA is defined as: "(A) a physical or mental impairment that substantially limits one or  more major life activities of such individual; (B) a record of such impairment; or (C) being regarded as having such an impairment. . . ." *Mary Jo C. v. New York*

---

information and belief, Plaintiff's physician did not want to assume any potential liability.

(Complaint ¶ 28). Plaintiff's characterization of the note is, at best, misleading. Further, "[i]f a document relied on in the complaint contradicts allegations in the complaint, the document, not the allegations, control, and the court need not accept the allegations in the complaint as true." *Poindexter v. EMI Record Grp. Inc.*, 2012 WL 1027639 at *2 (S.D.N.Y. 2012) (citing *Barnum v. Millbrook Care Ltd. P'ship*, 850 F.Supp. 1227, 1232-33 (S.D. N.Y. 1994)).

110813.4 4/15/2014

*State & Local Ret. Sys.*, 707 F.3d 144, 165 (2d Cir. 2013) (quoting 42 U.S.C. § 12102(2)). "The term 'substantially limits' means significantly restricted in the ability to perform either a class of jobs or a broad range of jobs in various classes as compared to the average person having comparable training, skills, and abilities." *Joseph v. HDMJ Rest., Inc.*, 2013 WL 4811225 at *11 (E.D.N.Y. 2013) (quoting *Fagan v. United Int'l Ins. Co.,* 128 F. Supp. 2d 182, 185 (S.D.N.Y. 2001)).

In order to be substantially limited in the major life activity of "working," the plaintiff is required to show that "she was precluded from more than one type of job, a specialized job, or a particular job of choice." *Reynolds v. Town of Suffield*, 2012 WL 3135896 at *7 (D. Conn. 2012) (citing *Pare v. City of Bristol*, 386 F. Supp. 2d 43, 49 (D. Conn. 2005)); *see also Cardo v. Arlington Ctr. Sch. Dist.*, 473 Fed. Appx. 21, 24 (2d Cir. 2012) (finding that a plaintiff failed to prove a substantial  limitation on working when a doctor's note prevented him from performing "his particular" job). *See also Montesano v. Westgate Nursing Home, Inc.*, 956 F. Supp. 2d 417 (W.D.N.Y. 2013) ("with respect to the major life activity of working, plaintiff must show that defendants regarded her as significantly restricted in her ability to perform a class or a broad range of jobs") (citing *Whitehead v. United Parcel Serv., Inc.*, 387 Fed. Appx. 16, 18 (2d Cir. 2010)); *Hammon v. Keyspan Energy,* 349 Fed. Appx. 629, 631 (2d Cir. 2009); *Burton v. Metropolitan Transit Authority*, 244 F. Supp.2d 252 (S.D.N.Y. 2003) (bus driver able to work other jobs deemed not to be disabled within meaning of ADA)

In light of Plaintiff's physician statement that Plaintiff can do all other types of work, he clearly is not disabled within the meaning of the ADA.

110813.4 4/15/2014

POINT III

**PLAINTIFF'S OVERTIME CLAIMS ARE BARRED
BY THE MOTOR CARRIER EXEMPTION**

**A.      The Motor Carrier Exemption - Background**

The FLSA contains a number of statutory exemptions excluding certain employees from the overtime requirements of the FLSA.   One complete exemption is the motor carrier exemption. *Bilyou v. Dutchess Beer Distributors Inc.*, 300 F.3d 217 (2d Cir. 2002).

This exemption, set forth in 29 U.S.C. § 213(b)(1) of the FLSA, provides:

> The provisions of section 207 of this title [the overtime provisions] shall not apply with respect to—
>
> (1) any employee with respect to whom the Secretary of Transportation has power to establish qualifications and maximum hours of service pursuant to the provisions of section 31502 of Title 49 [The Motor Carrier Act].

29 U.S.C. § 213(h)(1).

Congress determined that employees who are covered by the Motor Carrier Act, 49 U.S.C. § 31502 ("MCA"), are exempt from the overtime provisions of the FLSA because the Secretary of Transportation has regulatory authority over these employees. Whether the Secretary of Transportation establishes qualifications and maximum hours of service is immaterial; the controlling consideration is whether the Secretary has the power to do so. 29 C.F.R. § 782.1(a). *See also Klitzke v. Steiner Corp.*, 110 F.3d 1465, 1468 (9th Cir. 1997); *Turk v. Buffets Inc.*, 940 F. Supp. 1255, 1259 (N.D. Ill. 1996) ("The DOT retains its jurisdiction over the specified employees regardless of whether it has chosen to actually exercise its regulatory authority, and the overtime exemption applies to such employees despite the lack of DOT regulation"). *Accord Abel v. S. Shuttle Servs., Inc.,* 631 F.3d 1210, 1212 (11th Cir. 2011) (*per*

10

*curiam*); *Walters v. Am. Coach Lines of Miami*, Inc., 575 F.3d 1221, 1226 (11th Cir. 2009) (*per curiam*).

This exemption (the "MCA Exemption") exists "to eliminate any conflict between the jurisdiction exercised by the Department of Labor . . . over the FLSA and the mutually exclusive jurisdiction exercised by the [Department of Transportation] over the MCA." *Walters,* 575 F.3d at 1226 (citing *Spires v. Ben Hill County*, 980 F.2d 683, 686 (11th Cir. 1993)). "[T]he Secretary of Transportation does not have to exercise the authority granted to him by the MCA for the [MCA Exemption] to be applicable; instead, his power to regulate under the act merely needs to cover a particular group of employees." *Id.*(citing *Spires*, 980 F.2d at 686).

The Motor Carrier Act was enacted in 1935 in response to Congressional concerns about the safety of interstate commerce.  *Bilyou*, 300 F.3d at 221 n.2; *Peraro v. Chemlawn Servs. Corp.*, 692 F. Supp. 109, 113 (D. Conn. 1988).  The exemption serves to prevent conflict between the FLSA and the MCA. *Dauphin v. Chestnut Ridge Transp., Inc.*, 544 F. Supp. 2d 266, 271 (S.D.N.Y. 2008). Congress enacted the MCA "to promote efficiency, economy, and safety in interstate motor transport." *Khan v. IBI Armored Servs., Inc.*, 474 F. Supp. 2d 448, 450-51 (E.D.N.Y. 2007). To help achieve that purpose, it gave the Interstate Commerce Commission ("ICC") — and later, the DOT — the authority to regulate the maximum hours of work for employees of "common carriers" and "contract carriers" by motor vehicle. *Masson v. Ecolab, Inc.*, 2005 WL 2000133, at *5 (S.D.N.Y. 2005).

In *Levinson v. Spector Motor Service*, 330 U.S. 649, 661-62 (1947), the Supreme Court noted that Congress could have permitted both acts to apply concurrently, but did not:

> It [Congress] might have permitted both acts to apply. There is no necessary inconsistency between enforcing rigid maximum hours of service for safety purposes and at the same time, within those

> limitations, requiring compliance with the increased rates of pay
> for overtime work done in excess of the limits set in Section 7 of
> the FLSA. Such overlapping, however, has not been authorized by
> Congress and it remains for us to give full effect to the safety
> program to which Congress has attached primary importance, even
> to the corresponding exclusion by Congress of certain employees
> from the benefits of the compulsory overtime pay provisions of the
> Fair Labor Standards Act.

*Levinson*, 330 U.S. at 661-62.

In support of its decision prohibiting dual FLSA-MCA coverage, the Supreme Court stated that the MCA was aimed at limiting the number of hours worked to promote safety. The policy of promoting safety on the highways, the Court held, would be threatened by requiring extra compensation for overtime (i.e., overtime compensation may encourage employees to work more hours, not less, thereby defeating the safety goal). In pertinent part, the Supreme Court held:

> While a requirement of pay that is higher for overtime service than
> for regular service tends to deter employers from permitting such
> service, it tends also to encourage employees to seek it. The
> requirement of such increased pay is a remedial measure adapted
> to the needs of an economic and social program rather than a
> police regulation adapted to the rigid enforcement required in a
> safety program.

*Levinson*, 330 U.S. at 657.  In sum, even though the motor carrier exemption may result in excluding employees from coverage under the FLSA, Congress made this choice to promote safety.  Under 49 U.S.C. § 31502, the Secretary of Transportation has the power to set maximum hours and qualifications standards for employees of a "motor carrier" or "motor private carrier" when needed to promote the "safety of operation" of a motor vehicle. *See* 49 U.S.C. § 31502(a), (b)(2). *Bilyou*, 300 F.3d at 222-25.

### B.    Requirements to Meet the Motor Carrier Exemption

29 C.F.R. § 782.2, " Requirements for exemption in general," provides in part:

110813.4 4/15/2014

> (a) <u>The exemption</u> of an employee from the hours provisions of the Fair Labor Standards Act under section 13(b)(1) depends both on the class to which his employer belongs and on the class of work involved in the employee's job. The power of the Secretary of Transportation to establish maximum hours and qualifications of service of employees, on which exemption depends, extends to those classes of employees and those only who: (1) <u>Are employed by carriers whose transportation of passengers or property by motor vehicle is subject to his jurisdiction under section 204 of the Motor Carrier Act . . . and (2) engage in activities of a character directly affecting the safety of operation of motor vehicles in the transportation on the public highways of passengers or property in interstate or foreign commerce within the meaning of the Motor Carrier Act</u> . . .

(emphasis added).

In *McGuiggan v. CPC Intern'l, Inc.,* 84 F. Supp. 2d 470 (S.D.N.Y. 2000), the Court noted the two (2) requirements to meet the MCA exemption:

> [T]here are two requirements for falling within the [Motor Carrier] exception: (1) the employer . . . must be either a "motor carrier" or "motor private carrier" as defined by 49 U.S.C. § 31502(b)(2); and (2) the employees subject to the regulation [i.e., Plaintiffs] must be engaged in activities that affect the safety of operation of motor vehicles transporting property in interstate commerce. *See* 29 C.F.R. § 782.2(a).

See *also Abel v. Southern Shuttle Servs., supra,* 631 F.3d at 1213 ("the MCA confers upon the Secretary of Transportation the authority to regulate the maximum hours of service of employees who are employed (1) by a common carrier by motor vehicle; (2) engaged in interstate commerce; and (3) whose activities directly affect the safety of operations of such motor vehicles') (quoting *Walters v. American Coach, supra,* 575 F.3d at 1227).

13

**C.      Defendants Are Motor Carriers**

Here there is no dispute that the Defendants are subject to the jurisdiction of the Department of Transportation. The Complaint itself acknowledges this undisputed fact. Paragraph 19 of the complaint states:

> Plaintiff was required to undergo annual physical examinations pursuant to regulations proffered by the <u>Department of Transportation</u>.

(emphasis added).  Moreover, Paragraph 15 of the Complaint states:

> Leprechaun Lines is a <u>private bus company</u> based in Orange County, New York. The <u>carrier uses a fleet of coach-style buses to provide charter functions and a variety of service.</u> Two local routes run through Newburgh, connecting major shopping and employment destinations. Additionally a commuter shuttle runs between Stewart International Airport, Downtown Newburgh, a park and rife location on a New York State Route 17K and the Beacon Metro North Station.

Thus, the Complaint acknowledges that the Defendants are motor carriers within the meaning of the statute.

The definition of motor carrier has undergone a number of changes over the past ten (10) years although under any of these definitions Defendants would nonetheless be considered motor carriers.  Before August 10, 2005, a "motor carrier" was defined as "a person providing motor vehicle transportation for compensation," 49 U.S.C. §13102(12) (2004), and the MCA exemption "applied to all drivers operating in interstate commerce, regardless of the weight of the vehicle driven." *Buckner v. United Parcel Serv., Inc.,* 2012 WL 1596726 at *4 (E.D.N.C. 2012). On August 10, 2005, Congress changed the definition of a "motor carrier" to include only commercial motor vehicles. *Id.* Commercial vehicles were defined as vehicles having "a gross vehicle weight rating or gross vehicle weight of at least 10,001 pounds." *Id.* (citing 49 U.S.C. §31132(1)(A)). As a result, employees of motor vehicles operating vehicles weighing less than

110813.4 4/15/2014

10,001 pounds no longer qualified for the MCA exemption. *Id.; Jaramillo v. Garda, Inc.*, 2012 WL 4955932 at *3 (N.D. Ill. 2012) (citing 49 U.S.C. § 31132(1)); *Brooks v. Halstead Comms., Ltd.*, 620 F. Supp. 2d 193, 197-98 (D. Mass. 2009).

On June 6, 2008, Congress enacted the SAFETEA–LU Technical Corrections Act of 2008 (the "TCA"), which restored the 2004 definition of a "motor carrier," but retained the weight limitation for vehicles. *Jaramillo,* 2012 WL 4955932 at *3.  In sum, the TCA permits overtime claims under the FLSA by drivers of vehicles weighing 10,001 pounds or less. Drivers of vehicles weighing over 10,001 pounds such as Plaintiff remain exempt from the FLSA's overtime requirements. *Id.; Wells v. Fedex Ground Package Sys.,* 2013 U.S. Dist. LEXIS 139145 (E.D. Mo. 2013).

### D. Plaintiff's Work as a Driver Directly Affects the Safety of Operation of Motor Vehicles

The Complaint plainly alleges that the Plaintiff was employed by the Defendants as a "shuttle driver." Complaint ¶ 9.  As a driver, Plaintiff is clearly an individual engaged in activities that affect the safety of operation of motor vehicles. *See Benson v. Universal Ambulance Serv., Inc.*, 675 F.2d 783, 786 (6th Cir. 1982) ("It would appear to be beyond question that the driver of a common carrier vehicle directly affects the safety of operation of that vehicle"); *McGee v. Corp. Express Delivery System*, 2003 WL 22757757 at *4 (N.D. Ill. 2003) (collecting cases); 29 C.F.R. § 782.3 (drivers covered by MCA); *see also* Fact Sheet #19: The Motor Carrier Exemption Under the Fair Labor Standards Act (FLSA), U.S. Dept. of Labor, Wage and Hour Division, November 2009 (stating unequivocally that drivers affect the safety of operation of motor vehicles).

### E.    Plaintiff Engaged in Activities That Are Part of Interstate Commerce

Finally, the only issue remaining is whether Plaintiff engaged in work on the public highways, i.e., interstate commerce. The fact that Plaintiff's shuttle run remained within New York State, is, of course not dispositive. The motor carrier exemption still applies because:

> purely intrastate transportation can constitute part of interstate commerce if it is part of a 'continuous stream of interstate travel.' *Chao v. First Class Coach Co., Inc.* 214 F. Supp.2d 1263, 1272 (M.D. Fla. 2001). For this to be the case, there must be a 'practical continuity of movement' between the intrastate segment and the overall interstate flow.' *Walling v. Jacksonville Paper Co., Inc.*, 317 U.S. 564, 568 (1943).

*Walters v. American Coach*, 575 F.3d 1221, 1229 (11th Cir. 2009).  As one court has noted:

> wholly intrastate commerce is merely part of a "continuing transportation" in interstate or foreign commerce,... the motor carrier is subject to the Secretary of Transportation's jurisdiction.

*Burlington Northern, Inc. v. Weyerhaeuser Co.*, 719 F.2d 304, 309-10 (9th Cir. 1983).  See also *Merchants Fast Motor Lines, Inc. v. ICC*, 528 F.2d 1042, 1044 (5th Cir. 1976) ("It is elemental that a carrier is engaged in interstate commerce . . . even though the route of the particular carrier is wholly within one state. . . . ").  "Intrastate deliveries are considered part of interstate commerce if the property in question was originally delivered from out-of-state and the intrastate route is merely part of the final phase of delivery." *Watkins v. Ameripride Servs.,* 375 F.3d 821, 826 (9th Cir. 2004).

In *Bilyou v. Dutchess Beer Distributors, Inc.*, 300 F.3d 217 (2d Cir. 2002), the court held that a beer distributor that obtained inventory from out-of-state suppliers and breweries fell within the Motor Carrier Act's definition of motor private carrier. There the plaintiffs, drivers for the defendant, alleged that the Motor Carrier exemption was unavailable because they never

crossed state lines and therefore failed to satisfy the requirement of interstate commerce. The

Court summarily rejected this argument.

> Even if a carrier's transportation does not cross state lines, the interstate commerce requirement is satisfied if the goods being transported . . . are involved in a practical continuity of movement in the flow of interstate commerce. A temporary pause in the transit [of goods] does not mean that they are no longer in commerce . . . [I]f the halt in the movement of goods is a convenient intermediate step in the process of getting them to their final destinations, they remain in commerce until they reach those points. (Internal quotation marks omitted.)

*Id.* at 224.

Noting that the products Bilyou delivered were ultimately transported out-of-state, the

court concluded that this alone was sufficient to meet the interstate commerce requirement.

> In the course of delivering products to retail customers, Bilyou regularly picked up glass, plastic, and aluminum empties, as well as refillable containers, and carried them to Mid-Hudson's facility in Poughkeepsie for further shipment several times a week to destinations outside the State. Although Bilyou's carriage of the empties took place entirely within the State of New York, his carriage was merely one leg of a route to an out-of-state destination. His segment of the transportation of those empties was part of the interstate movement of goods. *See Jacksonville Paper*, 317 U.S. at 568, 63 S.Ct. 332 ("A temporary pause in the transit [of goods] does not mean that they are no longer 'in commerce'. . . . [I]f the halt in the movement of the goods is a convenient intermediate step in the process of getting them to their final destinations, they remain 'in commerce' until they reach those points."). We agree with the district court's determination that Bilyou's involvement in this process was part of a continuous movement of goods in interstate commerce. *Cf. Foxworthy*, 997 F.2d at 674 (the pick-up and deposit of empty milk crates at a distribution center that were then shipped to an out-of-state processing plant exempted employee drivers from FLSA overtime provisions); *Opelika Royal Crown Bottling Co. v. Goldberg*, 299 F.2d 37, 41-42 (5th Cir. 1962) (distributor's pick-up and return of empties to out-of-state brewery is part of the interstate movement of goods, where it is clear from the moment of pick-up that the empties have an intended final destination to a specific out-of-state brewery).

110813.4 4/15/2014

300 F.3d at 224.

In *Walters v. Am. Coach Lines of Miami, Inc.*, 575 F.3d 1221 (11th Cir. 2009), the Eleventh Circuit concluded that shuttle bus drivers who picked up passengers from the airport and transported them to cruise ship terminals were exempt under the MCA. The passengers arrived at the airport from out-of-state points of origin, and they were bound for cruises to out-of-state destinations. The court found that the shuttle bus operator was engaged in interstate commerce because its airport-to-seaport service constituted a component of the passengers' continuous interstate travel. *Id.* at 1230.  Similarly, in *Baez v. Wells Fargo Armored Service Corp.*, 938 F.2d 180 (11th Cir. 1991) (per curiam), the court held that armored truck guards, who transported currency bound for out-of-state banks, were engaged in interstate commerce because their services formed part of the continuous interstate transportation of the currency. 938 F.2d at 182 (citing *Opelika Royal Crown Bottling Co. v. Goldberg*, 299 F.2d 37, 43 (5th Cir. 1962)).

In *United States v. Capital Transit Company*, 338 U.S. 286 (1949), the Supreme Court found that certain local District of Columbia bus and streetcar routes were subject to regulation by the Interstate Commerce Commission. The bus route in issue took passengers from the suburbs within the District to the central business area. *Capital Transit*, 338 U.S. at 288-90. There, government employees transferred to a bus, operated by a different company, which took those passengers to their workplaces in Virginia. *Id.* The Supreme Court found that the "intra-District streetcar and bus transportation of passengers going to and from the Virginia establishments is an integral part of an interstate movement." *Id.* at 290.

Relying on *Capital Transit*, the Fifth Circuit, in *Marshall v. Victoria Transp. Co., Inc.*, 603 F.2d 1122 (5th Cir. 1979), found that purely intrastate bus services run by two (2) companies

110813.4 4/15/2014

in Brownsville, Texas were engaged in interstate commerce. *Marshall*, 603 F.2d at 1123-25. Although the bus routes were solely within Brownsville, the routes ran near a bridge between Texas and Mexico. *Id.* at 1124. The Fifth Circuit held that "although defendants' employees do not cross into Mexico, a substantial, regular and recurring part of their work consists of transporting persons that are making international journeys." *Id.* The Fifth Circuit concluded, "Because their work was entwined with a continuous stream of international travel, [the defendants] were engaged in commerce within the meaning of the [FLSA]." *Id.* at 1125.

In *Abel v. Southern Shuttle Servs., Inc.*, 631 F.3d 1210 (11th Cir. 2011), the court examined a "shared-ride airport shuttle" that transported passengers to and from three (3) South Florida airports. *Abel,* 631 F.3d at 1211. Some passengers arranged for shuttle transportation by directly contacting Southern Shuttle and others made reservations through internet package deals that included airfare and hotel accommodations along with transportation to and from the airport. *Id.* at 1212. The Eleventh Circuit found that "the purely intrastate transport of passengers to and from an airport may, under certain circumstances, constitute interstate commerce and thus bring the transportation company within the jurisdiction of the Secretary of Transportation." *Id.* at 1216. Noting that "[m]any of Southern Shuttle's passengers to and from the airport have either just flown from, or are about to fly to, places outside the state of Florida," the Eleventh Circuit found that the circumstances that would render the intrastate transport of passengers subject to the jurisdiction of the Secretary of Transportation were present. *Id.* at 1216-17. *See also Hayden v. Bowen*, 404 F.2d 682, 683 (5th Cir. 1968) (Houston Airport limousine service employees engaged in interstate commerce when work is directly and vitally related to instrumentality of interstate commerce, rather than isolated local activity); *Airlines Transp., Inc. v. Tobin*, 198 F.2d

249 (4th Cir 1952) (Raleigh-Durham Airport limousine service engaged in commerce) (citing *United States v. Capital Transit Co.*, 338 U.S. 286, 290 70 S. Ct. 115 (1949)).

Here the Complaint alleges that the Plaintiff transported passengers from Stewart *International* Airport to downtown Newburgh as well as the Beacon Metro North Train Stations. (Complaint ¶¶ 13, 16). While not specifically alleged in the Complaint the Court can take judicial notice of the fact that the Plaintiff's route would have to (and does) travel over Interstate Route 84. Passengers from all over the country and outside the United Sates are transported from the airport to different locations. They can and do return to the airport as well. Indeed, according to the web site of the Port Authority of New York/New Jersey, Stewart International Airport hosts four (4) airlines that fly directly to out-of-state destinations such as Detroit, Fort Lauderdale, Philadelphia, Orlando, and St. Petersburg-Clearwater. These include Allegiant, Jet Blue, Delta and US Airways. See http://www.panynj.gov/airports/swf-airlines.html. Also, according to the Federal Aviation Administration, the Airport had more than 200,000 "enplanements" in 2011 and over 185,000 "enplanements" in 2012. *See* http://www.faa.gov/airports/planning_capacity/passenger_allcargo_stats/passenger/media/CY12 CommercialServiceEnplanements.pdf Thus, there clearly is a continuous movement of thousands of interstate passengers.[3] Similarly, the plaintiff correctly notes that his route included stops at the park and ride location on New York State Route 17K. (Complaint ¶¶13, 16). There passengers can take charter busses to New Jersey and other interstate destinations.

---

[3] "The Court may take judicial notice of public records in deciding a motion to dismiss." *Manley v. Utzinger*, 2011 WL 2947008 at *1 n. 1 (S.D.N.Y. 2011). *See also Blue Tree Hotels Inv. (Can.), Ltd. v. Starwood Hotels & Resorts Worldwide, Inc.*, 369 F.3d 212, 217 (2d Cir. 2004) ("[b]ut we may also look to public records . . . in deciding a motion to dismiss").

110813.4 4/15/2014

In further support of the fact that Plaintiff is engaged in interstate transportation and therefore subject to the Motor Carrier exemption, the United States Department of Labor has issued regulations directly on this point. 29 CFR §782.7 provides in part:

> (a) …Transportation within a single State is in interstate commerce within the meaning of the Fair Labor Standards Act where it forms a part of a "practical continuity of movement" across State lines from the point of origin to the point of destination. (*Walling v. Jacksonville Paper Co.*, 317 U.S. 564; *Walling v. Mutual Wholesale Food & Supply Co.*, 141 F. (2d) 331 (C.A. 8); *Walling v. American Stores Co.*, 133 F. (2d) 840 (C.A. 3); *Baker v. Sharpless Hendler Ice Cream Co.* (E.D. Pa.), 10 Labor Cases, par. 62,956 5 W.H. Cases 926)
>
> \* \* \* \*
>
> (b)(1) Highway transportation by motor vehicle from one State to another, in the course of which the vehicles cross the State line, clearly constitutes interstate commerce under both acts. Employees of a carrier so engaged, whose duties directly affect the safety of operation of such vehicles, are within the exemption in accordance with principles previously stated. (*Southland Gasoline Co. v. Bayley*, 319 U.S. 44; *Plunkett v. Abraham Bros.*, 129 F. (2d) 419 (C.A. 6); *Vannoy v. Swift & Co.* (Mo. Sup. Ct.), 201 S.W. (2d) 350; *Nelson v. Allison & Co.* (E.D. Tenn.), 13 Labor Cases, par. 64,021; *Reynolds v. Rogers Cartage Co.* (W.D. Ky.), 13 Labor Cases, par. 63,978, *reversed on other grounds* 166 F. (2d) 317 (C.A. 6); *Walling v. McGinley Co.* (E.D. Tenn.), 12 Labor Cases, par. 63,731; *Walling v. A. H. Phillips, Inc.*, 50 F. Supp. 749, *affirmed* (C.A. 1) 144 F. (2d) 102,324 U.S. 490. *See* §§ 782.2 through 782.8.) The result is no different where the vehicles do not actually cross State lines but operate solely within a single State, if what is being transported is actually moving in interstate commerce within the meaning of both acts; the fact that other carriers transport it out of or into the State is not material. (*Morris v. McComb*, 68 S. Ct. 131; *Pyramid Motor Freight Corp. v. Ispass,* 330 U.S. 695; *Walling v. Silver Bros. Co.* 136 F. (2d) 168 (C.A. 1); *Walling v. Mutual Wholesale Food & Supply Co.*, 141 F. (2d) 331 (C.A. 8); *Dallum v. Farmers Cooperative Trucking Assn.*, 46 F. Supp. 785 (D. Minn.); *Gavril v. Kraft Cheese Co.*, 42 F. Supp. 702 (N.D. Ill.); *Keegan v. Rupport* (S.D.N.Y.), 7 Labor Cases, par. 61,726, 3 W.H. Cases 412; *Baker v. Sharpless Hendler Ice Cream* Co. (E.D. Pa.), 10 Labor Cases, par. 62,956, 5 W.H. Cases 926). Transportation within a single State is in interstate

21

> commerce within the meaning of the Fair Labor Standards Act where it forms a part of a "practical continuity of movement" across State lines from the point of origin to the point of destination. (*Walling v. Jacksonville Paper Co.*, 317 U.S. 564; *Walling v. Mutual Wholesale Food & Supply Co.*, 141 F. (2d) 331 (C.A. 8); *Walling v. American Stores Co.*, 133 F. (2d) 840 (C.A. 3); *Baker v. Sharpless Hendler Ice Cream Co.* (E.D. Pa.), 10 Labor Cases, par. 62,956 5 W.H. Cases 926)
>
> \* \* \* \*
>
> Under this enforcement policy it will ordinarily be assumed by the Administrator that the interstate commerce requirements of the section 13(b)(1) exemption are satisfied where it appears that a motor carrier employee is engaged as a driver, driver's helper, loader, or mechanic in transportation by motor vehicle which, although confined to a single State, is a part of an interstate movement of the goods or persons being thus transported so as to constitute interstate commerce within the meaning of the Fair Labor Standards Act.

(emphasis added). *See also Morris v. McComb*, 332 U.S. 422, 432-33 (1947) (general cartage business that primarily transported steel around the Detroit area either within local steel plants or to and from local steel plants but transported about 4% of its products across state lines met the *de minimus* interstate commerce requirement because they transported freight "in interstate commerce, either as part of continuous interstate movements or of interstate movements begun or terminated in metropolitan Detroit").

Thus, in light of the fact that (a) The Defendants are subject to the jurisdiction of the Department of Transportation, (b) the Defendants are motor carriers, (c) the Plaintiff is a driver, a position that directly affecting the safety of operation of motor vehicles and (d) Plaintiff transports passengers in interstate commerce within the meaning of the Motor Carrier Act, he is exempt from the overtime requirements of the FLSA.  Accordingly, the FLSA claims must be dismissed as a matter of law.

POINT IV

## PLAINTIFF'S RETALIATION
## CLAIMS FAIL TO STATE A CLAIM

Under the FLSA anti-retaliation provision, an employer is prohibited from discriminating against or discharging "any employee because such employee has filed any complaint . . . under or related to this chapter." 29 U.S.C. § 215(a)(3). To establish a prima facie claim of retaliation under the FLSA and the Labor Law, a plaintiff must show: "(1) participation in protected activity known to the defendant, like the filing of a FLSA lawsuit; (2) an employment action disadvantaging the plaintiff; and (3) a causal connection between the protected activity and the adverse employment action." *Mullins v. City of New York*, 626 F.3d 47, 53 (2d Cir. 2010); *Salazar v. Bowne Realty Assocs.*, 796 F. Supp. 2d 378, 384 (E.D.N.Y. 2011) (noting that the standards for stating a retaliation claim under the FLSA and the Labor Law "significantly overlap" and require the same three (3) elements). If plaintiff is able to make out a prima facie case of retaliation, the burden shifts to the employer to articulate a legitimate, nondiscriminatory reason for the termination. *Gorzynski v. JetBlue Airways Corp.*, 596 F.3d 93, 110 (2d Cir. 2010). If successful, the burden shifts back to the employee to produce evidence showing that the employer's proffered reason is pretextual. *Id.* at 111.

Here Plaintiff is unable to set forth a prima facie case of retaliation and, in any case, Defendants have a legitimate non-discriminatory reason for the reason Plaintiff is no longer employed.

In *Lambert v. Genesee Hosp.*, 10 F.3d 46, 55 (2d Cir. 1993), the Second Circuit held that the FLSA anti-retaliation provision only protects the filing of formal, written complaints "but does not encompass complaints made to a supervisor." In *Kasten v. Saint-Gobain Performance Plastics Corp.*, 131 S. Ct. 1325 (2011), the Supreme Court considered the narrow issue of

23

whether the FLSA anti-retaliation provision covers oral complaints. The Supreme Court held that "oral as well as written complaints" about FLSA violations to the government are protected under the anti-retaliation provision's term "filed any complaint." *Kasten*, 131 S. Ct. at 1329. The court noted that while a complaint must be "sufficiently clear and detailed for a reasonable employer to understand it . . . as an assertion of rights protected by the statute and a call for their protection," such a requirement "does not necessarily mean that notice must be in writing." *Id.* at 1335. Of significance, the Supreme Court "state[d] no view" on the merits of the appellee's alternative argument that internal complaints to an employer do not fall within the ambit of protection under the FLSA because the appellee failed to raise the issue in response to the appellant's petition for certiorari." *Eschmann v. White Plains Crane Service*, 2014 U.S. Dist. LEXIS 38580 * 34 (E.D.N.Y. 2014).

Courts in this circuit continue to hold that complaints to employers are not considered protected activity. Indeed, in *Eschmann, supra* Judge Matsumoto noted that courts in this circuit continue to hold that complaints by employees to their employers are not protected.

> Since *Kasten*, the Second Circuit has not revisited the issue of whether an internal complaint to an employer is protected by the FLSA anti-retaliation provision. Virtually every district court case in this circuit that has considered the issue, however, has concluded that *Kasten* only abrogated *Lambert* to a limited extent, and that the Second Circuit's holding that internal complaints to an employer are not protected by the FLSA remains controlling law in the circuit. *E.g., Robledo v. Number 9 Parfume Leasehold,* No. 12 Civ. 3579, 2013 WL 1718917, at *5 (S.D.N.Y. Apr. 9, 2013) (collecting cases); *Greathouse v. JHS Sec., Inc.*, No. 11 Civ. 7845, 2012 WL 3871523, at *8 (S.D.N.Y. Sept. 7, 2012) (holding that while *Kasten* abrogated *Lambert's* distinction between formal, written complaints and oral complaints, the rule that the FLSA anti-retaliation provision does not protect internal complaints "remains valid in this Circuit"); *Son v. Reina Bijoux, Inc.*, 923 F.Supp.2d 238, 244 (S.D. N.Y. 2011) ("[T]he Second Circuit's rule holding that complaints to employers do not qualify as a protected

activity controls"); *Ryder v. Platon*, No. 11-CV-4292, 2012 WL 2317772, at *7 (E.D.N.Y. June 19, 2012) (dismissing FLSA retaliation claim where employee only complained to employer in light of *Lambert* and *Kasten*); *Kassman v. KPMG LLP*, 925 F.Supp.2d 453, 473 n.6 (S.D.N.Y. 2013) (holding that *Lambert's* rule regarding internal complaints remains controlling precedent); *Liang v. Cafe Spice SB, Inc.*, 911 F.Supp.2d 184, 201 (E.D.N.Y. 2012) (same).

*Id.* at *34-35. *See also Seever v. Carols Corp.,* 528 F. Supp. 2d 159, 166 (W.D.N.Y. 2007)

Here, the Complaint alleges that Plaintiff had made complaints to Judy Gallagher about his failure to receive overtime and was informed that he was not entitled to same. (Complaint ¶ 25). Thus, as a matter of law, Plaintiff's complaint is not considered protected activity and therefore he is unable to set forth a prima facie case of retaliation under the FLSA. Moreover, Plaintiff's own admission that he could not drive a commercial vehicle because of medical issues is a legitimate basis for ending his employment. *See, e.g., Morgan v. Future Ford Sales,* 830 F. Supp. 807 (D. Del. 1993) (retaliation claim dismissed where employer had legitimate reason for terminating Plaintiff, i.e., poor performance).

## CONCLUSION

For all of the foregoing reasons, the Defendants' motion to dismiss should be granted and the Complaint should be dismissed in its entirety.

Dated:       Garden City, New York
             April 16, 2014

Mark N. Reinharz (MR 6201)
BOND, SCHOENECK & KING, PLLC
Attorneys for Defendants
1010 Franklin Avenue, Suite 200
Garden City, New York 11530
(516) 267-6320
mreinharz@bsk.com

110813.4 4/15/2014

## CERTIFICATE OF SERVICE

I hereby certify that on April 16, 2014 the foregoing document was filed with the Clerk of the Court and served in accordance with the Federal Rules of Civil Procedure, and/or the Southern District's Local Rules, and/or the Southern District's Rules on Electronic Service upon the following parties and participants:

Randy J. Perlmutter, Esq.
747 Chestnut Ridge Road – Suite 200
Chestnut Ridge, NY 10977

Mark N. Reinharz (MR6201)
BOND, SCHOENECK & KING, PLLC
*Attorneys for Defendants Newburgh-Beacon Bus Corporation and Leprechaun Lines, Inc.*
1010 Franklin Avenue, Suite 200
Garden City, New York  11530
(516) 267-6320; mreinharz@bsk.com