UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
--------------------------------------------------------x
ALAN H. HAMILTON,

                          Plaintiff,

               -against-                          **14 Civ. 0624 (VLB)**

NEWBURGH-BEACON BUS
CORPORATION, LEPRECHAUN LINES,
INC. AND JOHN DOE 1-10,

                        Defendants.
--------------------------------------------------------x

**REPLY MEMORANDUM OF LAW IN SUPPORT OF
MOTION TO DISMISS THE COMPLAINT
SUBMITTED BY DEFENDANTS
NEWBURGH-BEACON BUS CORPORATION
AND LEPRECHAUN LINES, INC.**

**TABLE OF CONTENTS**

PRELIMINARY STATEMENT ...............................................................................................1

ARGUMENT .......................................................................................................................2

    POINT I        PLAINTIFF'S OVERTIME CLAIMS ARE BARRED BY THE
                          MOTOR CARRIER EXEMPTION.........................................................2

          A.     Under the Facts Alleged in the Complaint, Plaintiff is Covered by
                the Motor Carrier Exemption and Not Entitled to Overtime Pay ................2

          B.     Caselaw Supports Defendants' Position That the MCA Exemption
                Applies ...................................................................................................4

          C.     Plaintiff Is Exempt Because He Drove A Vehicle That Weighed
                More Than 10,000 Pounds and Could Transport More Than Eight
                Individuals..............................................................................................8

    POINT II      PLAINTIFF'S CLAIMS FOR REST AND MEAL BREAKS FAIL
                          TO STATE A CLAIM UNDER THE FLSA.............................................10

CONCLUSION...................................................................................................................10

113184.2 6/6/2014

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Abel v. Southern Shuttle Servs., Inc.,*
  631 F.3d 1210 (11th Cir. 2011) ..................................................................6, 7

*Avery v. Chariots for Hire,*
  748 F. Supp. 2d 492 (D. Md. 2010) ...............................................................3, 9

*Benson v. Universal Ambulance Serv., Inc.,*
  675 F.2d 783 (6th Cir. 1982) ...........................................................................2

*Bilyou v. Dutchess Beer Distributors, Inc.,*
  300 F.3d 217 (2d Cir. 2002) .............................................................................5

*Chambers v. Time Warner, Inc.,*
  282 F.3d 147 (2d Cir. 2002) .............................................................................4

*Covington v. Target Corp.,*
  2013 U.S. Dist. LEXIS 137810 (D. Md. 2013) ...............................................10

*Harris v. Reliable Reports,*
  2014 U.S. Dist. LEXIS 31223 (N.D. Ind. 2014) .............................................10

*Kuznyetsov v. W. Penn Allegheny Health Sys., Inc.*
  2009 WL 1515175 (W.D. Pa. 2009) ...............................................................10

*Marshall v. Victoria Transp. Co., Inc.,*
  603 F.2d 1122 (5th Cir. 1979) .......................................................................7, 8

*Masson v. Ecolab,*
  2005 WL 2000133 (S.D.N.Y. 2005) ..............................................................4, 5

*McGee v. Corp. Express Delivery System,*
  2003 WL 22757757 (N.D. Ill. 2003) ................................................................2

*Morris v. McComb,*
  332 U.S. 422 (1947) ..........................................................................................5

*O'Brien v. Lifestyle Transp.,*
  956 F. Supp.2d 300 (D. Mass. 2013) ...............................................................9

*Official Comm. of the Unsecured Creditors of Color Tile, Inc. v. Coopers &*
  *Lybrand, LLP,*
  322 F.3d 147 (2d Cir. 2002) .............................................................................3

113184.2 6/6/2014

*Onondaga Nation v. New York,*
    500 Fed. Appx. 87 (2d Cir. 2012) ................................................................8

*Packard v. Pittsburgh Transp. Co.,*
    418 F. 3d 246 (3d Cir. 2005) ..............................................................5, 6

*United States v. Yellow Cab Co.,*
    332 U.S. 218, 67 S. Ct. 1560 (1947) ..........................................................6

*Walters v. Am. Coach Lines of Miami, Inc.,*
    575 F.3d 1221 (11th Cir. 2009) .................................................................6, 7

*Walters v. American Coach Lines of Miami, Inc.,*
    569 F. Supp. 2d 1270 (S.D. Fla. 2008), *aff'd,* 575 F.3d 1221 (11th Cir. 2009) ....................6, 7

*Whitehurst v. 230 Fifth,*
    2014 U.S. Dist. LEXIS 22997 (S.D.N.Y. 2014) .....................................3

**Statutes**

29 U.S.C. § 213 ........................................................................................4

29 U.S.C. § 213(b)(1) ...............................................................................1

29 U.S.C.§215 (a)(3) ...............................................................................1

2005 SAFETEA-LU and 2008 SAFETEA-LU Technical Corrections Act ...................................9

Americans with Disabilities Act, 42 U.S.C. §12101 *et seq.* ........................................1

Fair Labor Standards Act (FLSA) 29 U.S.C. §201 *et seq.* ..................................... *passim*

Motor Carrier Act. ..............................................................................3, 8

New York Labor Law §160 .......................................................................1

New York Labor Law §662 ......................................................................1

Pub.L. 110-224, 122 Stat. 1572, § 306(c) .......................................................9

*SAFETEA–LU Technical Corrections Act of 2008*, Pub.L. No. 110-244, §§ 305-
    06, 122 Stat. 1572, 1620-21 (2008) ..........................................................8

New York State State Labor Law ..............................................................4

**Other Authorities**

29 C.F.R. § 782.3 ...................................................................................2

113184.2 6/6/2014

FED. R. EVID. 201(b) ....................................................................................................8

Rule 12(b)(6) of the Federal Rules of Civil Procedure...........................................1, 3

http://www.faa.gov/airports/planning_capacity/passenger_allcargo_stats/passenge
    r/media/CY12CommercialServiceEnplanements.pdf ............................................5

http://www.panynj.gov/airports/swf-airlines.html..................................................4

*U.S. Dept. of Labor, Wage and Hour Division, November 2009*
    http://www.dol.gov/whd/regs/compliance/whdfs19.htm.......................................2

*Labor Wage and Hour Division, Handy Reference Guide to the Fair Labor
    Standards Act 1* (WH Publication 1282 *rev. 'd* Apr. 2011), *available at*
    www.dol.gov/whd/regs/compliance/wh1282.pdf.;* ............................................10

*Fact Sheet #19: The Motor Carrier Exemption Under the Fair Labor Standards
    Act (FLSA)* .........................................................................................................2

113184.2 6/6/2014

## PRELIMINARY STATEMENT

Defendants, Newburgh-Beacon Bus Corporation, and Leprechaun Lines, Inc. ("Defendants"), submit this Reply Memorandum of Law in support of their motion to dismiss the Complaint pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure.

In his Complaint, Plaintiff initially alleged five (5) separate causes of action:

First Count:  He was not paid overtime in violation of the Fair Labor Standards Act ("FLSA"), 29 U.S.C. §201 *et seq.*

Second Count: He was not paid overtime in violation of New York Labor Law §160 and NYCRR §142.2 ("Labor Law").

Third Count:  He was mistreated and ultimately discharged because of his complaints about not being paid overtime in violation of the FLSA, in particular 29 U.S.C. §215(a)(3).

Fourth Count: Plaintiff was discriminated against because of his complaints about Defendant's pay practices in violation of New York Labor Law § 662.

Fifth Count: Plaintiff was a disabled individual and subject to unlawful disability discrimination in violation of the Americans with Disabilities Act ("ADA"), 42 U.S.C. §12101 *et seq.*

On April 24, 2014 Plaintiff withdrew his last three (3) causes of action. *See* ECF Docket Entry 13.  Thus, his only remaining claims are his federal and state overtime law claims.

Plaintiff maintains that because the Motor Carrier Exemption is an affirmative defense, it cannot be determined on a motion to dismiss. As set forth below, this is incorrect. As a shuttle bus driver transporting passengers to and from Stewart International Airport, the Rt. 17K Park & Ride lot and Beacon Metro North Train Station, Plaintiff was engaged in a continuous stream of interstate commerce. He is covered by the Motor Carrier Exemption, 29 U.S.C. § 213(b)(1), and therefore is not entitled to overtime pay.

**ARGUMENT**

**POINT I**        **PLAINTIFF'S OVERTIME CLAIMS ARE BARRED BY THE MOTOR CARRIER EXEMPTION**

      **A.**   **Under the Facts Alleged in the Complaint, Plaintiff is Covered by the Motor Carrier Exemption and Not Entitled to Overtime Pay**

Only by ignoring the clear language of his own Complaint, can Plaintiff make the serious claim that there are insufficient facts for the Court to consider the Motor Carrier Exemption as a basis for dismissal. For example, there is no dispute that the Defendants are subject to the jurisdiction of the Department of Transportation. *See* Complaint ¶ 19 (Plaintiff was required to undergo annual physical examinations required by the Department of Transportation). Moreover, Plaintiff admits that Leprechaun Lines is a private bus company and a carrier that uses a fleet of coach-style buses and operates a commuter shuttle that runs between Stewart International Airport, Downtown Newburgh, a park and ride location on a New York State Route 17K and the Beacon Metro North Station (Complaint ¶ 13). Plaintiff drove the shuttle (Complaint ¶16).

Plaintiff does not nor could he dispute the fact that as a driver of a shuttle bus he is clearly an individual engaged in activities that affect the safety of operation of motor vehicles. *See Benson v. Universal Ambulance Serv., Inc.*, 675 F.2d 783, 786 (6th Cir. 1982) ("It would appear to be beyond question that the driver of a common carrier vehicle directly affects the safety of operation of that vehicle"); *McGee v. Corp. Express Delivery System*, 2003 WL 22757757 at \*4 (N.D. Ill. 2003) (collecting cases); 29 C.F.R. § 782.3 (drivers covered by MCA); *see also Fact Sheet #19: The Motor Carrier Exemption Under the Fair Labor Standards Act (FLSA), U.S. Dept. of Labor, Wage and Hour Division, November 2009* http://www.dol.gov/whd/regs/compliance/whdfs19.htm (stating unequivocally that drivers affect the safety of operation of motor vehicles).

2

Plaintiff claims that there are insufficient facts to determine whether Plaintiff has "engaged in in activities of a character directly affecting the safety of operation of motor vehicles in the transportation on the public highways of passengers or property in interstate or foreign commerce within the meaning of the Motor Carrier Act."   Pl. Mem. at p. 6 *quoting* 29 CFR §782.2(a). The Complaint, however, acknowledges that the Defendants are under the jurisdiction of the Department of Transportation and operate busses including a shuttle that continuously operates between Stewart International Airport and other locations throughout Orange and Dutchess Counties. Plaintiff is bound by these admissions. "The allegations in [a] . . . Complaint are 'judicial admissions' by which ... [a plaintiff] is 'bound throughout the course of the proceeding." *Official Comm. of the Unsecured Creditors of Color Tile, Inc. v. Coopers & Lybrand, LLP*, 322 F.3d 147 (2d Cir. 2002). *See also Whitehurst v. 230 Fifth*, 2014 U.S. Dist. LEXIS 22997 *29 (S.D.N.Y. 2014) ("the allegations in the Complaint are judicial admissions to which Plaintiffs are bound"); *Soo Line R.R. v. St. Louis S.W. Railway* Co., 125 F.3d 481, 483 (7th Cir. 1997) ("judicial efficiency demands that a party not be allowed to controvert what it has already unequivocally told a court by the most formal and considered means possible").

Plaintiff also asserts that because this is a motion to dismiss, Defendants are unable to prove that the affirmative defense of the Motor Carrier exemption is applicable. *See* Pl. Mem. at pp. 1-2. This is simply not the case.  Indeed, in *Avery v. Chariots for Hire*, 748 F. Supp. 2d 492, 499-501 (D. Md. 2010), the Plaintiffs, drivers of a company that provided chauffeured ground transportation, asserted that they were not paid overtime as required by the FLSA. The Court granted the employer's Rule 12(b)(6) motion to dismiss on the ground that, as a matter of law, the Plaintiff's overtime claims were barred by the Motor Carrier Exemption.

In short, that this is a motion to dismiss does not allow Plaintiff to avoid the fact he has chosen to plead in this action. For purposes of evaluating a motion to dismiss, the Court accepts

3

as true all well-pleaded factual allegations and draws all reasonable inferences in plaintiffs favor. *Chambers v. Time Warner, Inc.*, 282 F.3d 147, 152 (2d Cir. 2002). Accepting Plaintiff's allegations, the Complaint, must, as a matter of law, be dismissed.[1]

### B.    Caselaw Supports Defendants' Position That the MCA Exemption Applies

Plaintiff cites the court's opinion in *Masson v. Ecolab*, 2005 WL 2000133 (S.D.N.Y. 2005). That decision is clearly inapposite. In *Masson*, the plaintiffs worked for Ecolab, servicing commercial dishwashing machines leased by the company to customers in Atlanta, Georgia. Each plaintiff had a specific set of customers to service and drove routes entirely within the state. On occasion, however, parts and other equipment from out of state were shipped to plaintiffs' homes. Some of the equipment was kept as stock items; other parts were shipped in response to a specific customer's needs. While the parties agreed that transportation of out-of-state parts by plaintiffs to fill specific customer orders constituted interstate commerce for purposes of the MCA exemption, the degree of such activity remained in dispute.

Here, *as pled in the Complaint*, Plaintiff's job was to continuously transport passengers to and from an *International* Airport and a Metro North Station. There is no dispute that the passengers being transported to the airport are travelers in interstate commerce. As set forth in Defendants' initial memorandum of law, Stewart International Airport hosts four (4) airlines that fly directly to out-of-state destinations such as Detroit, Fort Lauderdale, Philadelphia, Orlando, and St. Petersburg-Clearwater. These include Allegiant, Jet Blue, Delta and US Airways. *See* http://www.panynj.gov/airports/swf-airlines.html. Also, according to the Federal Aviation Administration, the Stewart International Airport had more than 200,000 "enplanements" in 2011 and over 185,000 "enplanements" in 2012. *See*

---

[1] Likewise, Plaintiff's New York State Labor Law claims for overtime should be dismissed as the state specifically recognizes the Motor Carrier exemption. *See* §142-2.2 of the Minimum Wage Order for Miscellaneous Industries and Occupations (recognizing exemptions under the 29 U.S.C. § 213).

113184.2 6/6/2014

http://www.faa.gov/airports/planning_capacity/passenger_allcargo_stats/passenger/media/CY12
CommercialServiceEnplanements.pdf.

Thus, this is not a case such as *Masson* where drivers have little if anything to do with interstate commerce. Moreover, the amount of interstate commerce itself need not be great. *See Morris v. McComb*, 332 U.S. 422, 432-33 (1947) (cartage business that transported steel around the Detroit area either within local steel plants or to and from local steel plants but transported about 4% of its products across state lines met the *de minimus* interstate commerce requirement because they transported freight "in interstate commerce, either as part of continuous interstate movements or of interstate movements begun or terminated in metropolitan Detroit").

The cases cited by Defendants in their initial memorandum of law clearly support the view that a shuttle bus driver travelling continuously between an international airport and train station is clearly engaged in interstate commerce. The Court's ruling in *Bilyou v. Dutchess Beer Distributors, Inc.*, 300 F.3d 217, 224 (2d Cir. 2002), is dispositive in this case. The Second Circuit concluded that "even if a carrier's transportation does not cross state lines, the interstate commerce requirement is satisfied if the goods being transported . . . are involved in a practical continuity of movement in the flow of interstate commerce."

Plaintiff claims that *Bilyou* is distinguishable because that case involved goods as opposed to passengers. He cites the out-of-District decision in *Packard v. Pittsburgh Transp. Co.*, 418 F.3d 246 (3d Cir. 2005), for the proposition that moving people is distinguishable. In *Packard,* however, the drivers were employed by the Pittsburgh Transportation Company's ACCESS transit service ("ACCESS drivers"). ACCESS drivers, unlike the Plaintiff herein, "did not have regular, set routes, or set stops or schedules from day to day." *Id.* at 249. In fact, their services were not available to the general public. *Id.* at 248. Rather, they provided transportation to elderly and disabled people who were unable to use other forms of public transportation. The

113184.2 6/6/2014

person would have to schedule the ride at least one (1) day in advance. The driver would then come to the residence of the individual and drive him/her to a particular destination. Occasionally they would transport individuals to Amtrak stations, Greyhound bus stops, and the airport. Thus, the drivers in *Packard* essentially operated as taxi drivers transporting individuals from their homes and not operating in a continuous stream of commerce.

In contrast, here, the Plaintiff, as alleged in the Complaint, worked on a "commuter shuttle route [that] runs between Stewart International Airport, Downtown Newburgh, a park and ride location on New York State Route 17K, and the Beacon Metro-North station." (Complaint ¶¶13,16).  Plaintiff, unlike the individual in *Packard*, operated in a continuous movement and a continuous stream of interstate commerce.

As the court noted in *Walters v. American Coach Lines of Miami, Inc.*, 569 F. Supp. 2d 1270, 1289 (S.D. Fla. 2008), *aff'd*, 575 F.3d 1221, 1229 (11th Cir. 2009):

> because their work [shuttle drivers] is entwined with a continuous stream of interstate and international travel, the Court finds that Defendant's drivers transporting passengers on the airport-to-seaport and seaport-to-airport routes are engaged in commerce within the meaning of the FLSA.

Indeed, in *United States v. Yellow Cab Co.*, 332 U.S. 218, 228, 67 S. Ct. 1560 (1947), the Supreme Court noted "[w]hen persons or goods move from a point of origin in one state to a point of destination in another, the fact that a part of that journey consists of transportation by an independent agency solely within the boundaries of one state does not make that portion of the trip any less interstate in character." *Id.* at 228, 67 S.Ct. at 1566 (emphasis added).

Plaintiff tries to distinguish cases cited in Defendants' principal memorandum, *e.g.*, *Walters v. Am. Coach Lines of Miami, Inc.*, 575 F.3d 1221 (11th Cir. 2009) and *Abel v. Southern Shuttle Servs., Inc.*, 631 F.3d 1210 (11th Cir. 2011).  Both cases, however, squarely held that intrastate shuttle drivers carrying passengers originating from out of state or going out of state

6

are covered by the Motor Carrier Exemption because of the continuous stream of interstate travel. Indeed, in *Walters,* the court held:

> ACLM's airport-to-seaport routes would come under the Secretary's MCA jurisdiction. Its shuttle trips share a practical continuity of movement with the interstate or international travel of the cruise lines and their passengers, just as the Brownsville bus routes did for their riders' cross-border journeys. For cruise ship passengers arriving at the airport or seaport, ACLM's shuttle rides would be part of the continuous stream of interstate travel that is their cruise vacation.

575 F.3d at 1230. In *Abel*, *supra*, the court, noted that in its earlier decision in *Walter,* it had "concluded that 'purely intrastate transportation can constitute part of interstate commerce if it is part of a continuous stream of interstate travel.' For this to be the case, there must be a 'practical continuity of movement' between the intrastate segment and the overall interstate flow.'" 631 F. 3d at 1214.  Accordingly, the court in *Abel* held that the shuttle drivers transporting passengers to and from airports intrastate were exempt because "Southern Shuttle's local transport of these package-deal travelers has a 'practical continuity of movement' with the overall interstate journey. *Id.* at 1217. As in both of these cases, Plaintiff here operated a shuttle that involved the continuity of movement of passengers engaged in interstate travel.

The weakness of Plaintiff's case is underscored by the fact that he completely ignores the court's decision in *Marshall v. Victoria Transp. Co., Inc.*, 603 F.2d 1122 (5th Cir. 1979).  In *Marshall* the court found that purely intrastate bus service run by two (2) companies in Brownsville, Texas was interstate commerce. *Marshall*, 603 F.2d at 1123-25. Although the bus routes were solely within Brownsville, the routes ran near a bridge between Texas and Mexico. *Id.* at 1124. The Fifth Circuit held that "although defendants' employees do not cross into Mexico, a substantial, regular and recurring part of their work consists of transporting persons that are making international journeys." *Id.* The Fifth Circuit concluded, "Because their work

was entwined with a continuous stream of international travel, [the defendants] were engaged in commerce within the meaning of the [FLSA]." *Id.* at 1125.

### C.      Plaintiff Is Exempt Because He Drove A Vehicle That Weighed More Than 10,000 Pounds <u>and</u> Could Transport More Than Eight Individuals

Finally, Plaintiff makes the bold assertion that there is no evidence in the record to establish that the shuttle bus he drove was more than 10,000 pounds. Pl. Mem at p. 16. This kind of assertion turns logic on its head. Certainly a court can take judicial notice that a bus weighs more than 10,000 pounds. *See, e.g., Onondaga Nation v. New York*, 500 Fed. Appx. 87 (2d Cir. 2012) ("[i]t was not an abuse of discretion for the trial court to take judicial notice of such obvious facts. *See* FED. R. EVID. 201(b) (judicial notice may be taken of facts that are "generally known")). But even if these facts are not considered, Plaintiff's claim must nonetheless be dismissed because he is not a "covered employee" under the FLSA or Labor Law.

Plaintiff misstates the law with regard to the applicability of the Motor Carrier Act. Plaintiff claims that "Defendants concede that employees of motor vehicles weighing less than 10,001 lbs no longer qualify for the motor carrier exemption." Pl. Mem at p. 15. This is not the case. Rather, in a nutshell, under the Motor Carrier exemption an individual driving a vehicle that is more than 10,000 pounds is exempt from the overtime requirements. *However, in some cases, even if the vehicle is 10,000 pounds or less the individual may nonetheless be exempt.*

On June 6, 2008, Congress passed the *SAFETEA–LU Technical Corrections Act of 2008* ("*TCA*"), Pub.L. No. 110-244, §§ 305-06, 122 Stat. 1572, 1620-21 (2008). The *TCA* provided that certain covered employees would not be subject to the exemption. These included:

>      an individual —
>
>      (1) who is employed by a motor carrier or motor private carrier
> . . . [w]hose work, in whole or in part, is defined
>
>      (A) as that of a driver, driver's helper, loader, or mechanic;

8

and

>    (B) As affecting the safety of operation of motor vehicles
>    weighing 10,000 pounds or less in transportation on public
>    highways in interstate or foreign commerce, except vehicles —
>
>    (i) designed or used to transport more than 8 passengers
>    (including the driver) for compensation;

P.L. 110-244, Title III, § 306(c) (emphasis added).  In short, even drivers of vehicles weighing

less that 10,001 pounds are exempt from the overtime requirements if the vehicles can transport

more than 8 passengers. *See* USDOL Fact Sheet #19, *supra* (drivers of vehicles transporting

more than 8 individuals not covered employees and therefore not entitled to overtime).

Indeed, in *Avery, supra*, the court specifically rejected the claims of drivers that because

their vehicles may have been less than 10,000 pounds, they were "covered employees "entitled to

overtime under the FLSA. The Court noted that under the 2005 SAFETEA-LU and 2008

SAFETEA-LU Technical Corrections Act they were no longer covered.  As the court explained:

>    The more reasonable interpretation, and the one that will be
>    applied here, is that the list contains alternatives such that the
>    motor carrier exemption applies to employees that drive vehicles
>    weighing at least 10,001 pounds and to employees that drive
>    vehicles that could transport at least eight passengers for
>    compensation, regardless of weight.

748 F. Supp. 2d at 499. *See also O'Brien v. Lifestyle Transp.*, 956 F. Supp.2d 300, 306 (D. Mass.

2013) ("[t]he TCA explicitly excepts vehicles designed to transport more than eight passengers,

so drivers of such vehicles are not covered employees, and therefore not entitled to overtime. *See*

Pub.L. 110-224, 122 Stat. 1572, § 306(c).").

In short, even if Plaintiff wants to take the position that the shuttle busses he drove were

less than 10,000 pounds, he would still not be a "covered employee" because he operated a

shuttle bus for compensation that was designed or used to transport more than eight (8)

passengers.

113184.2 6/6/2014

**POINT II**          **PLAINTIFF'S CLAIMS FOR REST AND MEAL BREAKS FAIL TO STATE A CLAIM UNDER THE FLSA**

Plaintiff also asserts that he was not properly given rest and lunch breaks throughout his employment. Pl. Mem. at p. 16. This, too, fails to state a claim. "The FLSA does not require an employer to provide employees with rest periods or breaks" *Covington v. Target Corp.*, 2013 U.S. Dist. LEXIS 137810, *17 (D. Md. 2013). *See also* USDOL Fair Labor Standards Act Advisor ("the Fair Labor Standards Act (FLSA) does not require breaks or meal periods be given to workers") *available at* http://www.dol.gov/elaws/faq/esa/flsa/008.htm.; *Harris v. Reliable Reports,* 2014 U.S. Dist. LEXIS 31223, * 11 (N.D. Ind. 2014) ("the FLSA does not require an employer to give meal breaks") *citing U.S. Dept. of Labor Wage and Hour Division, Handy Reference Guide to the Fair Labor Standards Act 1* (WH Publication 1282 *rev.'d* Apr. 2011), *available at* www.dol.gov/whd/regs/compliance/wh1282.pdf.; *Kuznyetsov v. W. Penn Allegheny Health Sys., Inc.* 2009 WL 1515175 * 8 (W.D. Pa. 2009) ("Defendants are correct that the FLSA does not require employers to make meal breaks available"). Thus, any such claim would have to be dismissed as a matter of law. Further, it is unclear if such a claim is even mentioned in the Complaint as no statute or any reference to such a violation is included in any of the remaining causes of action. As such, these claims should, as a matter of law, be dismissed.

## CONCLUSION

For all of the foregoing reasons, the Court should grant the Defendants' motion to dismiss, dismiss the complaint in its entirety and award Defendants their costs and fees.

Dated:          Garden City, New York
                June 9, 2014

                Mark N. Reinharz (MR 6201)
                BOND, SCHOENECK & KING, PLLC
                Attorneys for Defendants
                1010 Franklin Avenue, Suite 200
                Garden City, New York 11530
                (516) 267-6320
                mreinharz@bsk.com

113184.2 6/6/2014

## CERTIFICATE OF SERVICE

I hereby certify that on June 9, 2014 the foregoing document was filed with the Clerk of the Court and served in accordance with the Federal Rules of Civil Procedure, and/or the Southern District's Local Rules, and/or the Southern District's Rules on Electronic Service upon the following parties and participants:

    Randy J. Perlmutter, Esq.
    747 Chestnut Ridge Road – Suite 200
    Chestnut Ridge, NY 10977
    *Attorney for Plaintiff*

                    Mark N. Reinharz (MR6201)
                    BOND, SCHOENECK & KING, PLLC
                    *Attorneys for Defendants Newburgh-Beacon*
                    *Bus Corporation and Leprechaun Lines*
                    1010 Franklin Avenue, Suite 200
                    Garden City, New York 11530
                    (516) 267-6320; mreinharz@bsk.com