UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
--------------------------------------------------------------x
ALAN H. HAMILTON,                                 :
                 Plaintiff,            :  **MEMORANDUM DECISION**
                                                                    :
v.                                                :  14 CV 624 (VB)
                                                                    :
NEWBURGH-BEACON BUS                               :
CORPORATION, LEPRECHAUN LINES,                    :
INC., and JOHN DOE 1-10,                          :
                 Defendants.           :
--------------------------------------------------------------x

Briccetti, J.:

    Plaintiff Alan H. Hamilton brings claims pursuant to the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201 et. seq., and the New York Labor Law ("NYLL") § 160, 12 N.Y.C.R.R. § 142-2.2,[1] alleging his employers, defendants Newburgh-Beacon Bus Corporation, Leprechaun Lines, Inc., and John Doe 1-10,[2] failed to pay him overtime wages and provide him rest and lunch breaks.

    Now pending is defendants' motion to dismiss.  (Doc. #8).  For the following reasons, the motion is DENIED in part and GRANTED in part.

    The Court has subject matter jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1367.

## BACKGROUND

    For purposes of ruling on a motion to dismiss, the Court accepts all factual allegations of the complaint as true, and draws all reasonable inferences in plaintiff's favor.

---

[1] Plaintiff also brought claims under the FLSA and NYLL for unlawful retaliation and sought damages under the Americans with Disabilities Act, 42 U.S.C. § 12101 et. seq., for defendants' alleged discriminatory conduct.  However, plaintiff has withdrawn those claims. (Doc. #13).

[2] John Doe 1-10 are the owners of Newburgh-Beacon Bus Corporation and Leprechaun Lines, Inc.

Defendants manage and operate "a fleet of coach-style buses" providing "charter functions and a variety of services" in Orange County, New York. (Compl. ¶ 13). Plaintiff was employed by defendants as a shuttle bus driver from June 2004 to October 10, 2013. During this time, plaintiff transported passengers "to and from the park and ride in Newburgh and the Beacon Metro-North train station." (Id. ¶ 16).

Plaintiff alleges he was not paid at one and one-half times his regular rate of pay for overtime work he performed during the course of his employment, in violation of the FLSA and NYLL, and he was neither provided nor paid for rest or lunch breaks. Defendants argue plaintiff's federal and state claims for unpaid overtime wages must be dismissed because plaintiff is exempt from the statues' overtime provisions under the Motor Carrier Exemption of the FLSA, 29 U.S.C. § 213(b)(1). Defendants also argue any allegation defendants failed to provide plaintiff rest and lunch breaks must be dismissed because the FLSA does not require an employer to provide employees with rest or lunch breaks.

## DISCUSSION

I.  Legal Standard

In deciding a motion to dismiss pursuant to Rule 12(b)(6), the Court evaluates the sufficiency of the complaint under the "two-pronged approach" suggested by the Supreme Court in Ashcroft v. Iqbal. 556 U.S. 662, 679 (2009). First, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements," are not entitled to the assumption of truth and are thus not sufficient to withstand a motion to dismiss. Id. at 678; Hayden v. Paterson, 594 F.3d 150, 161 (2d Cir. 2010). Second, "[w]hen there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." Ashcroft v. Iqbal, 556 U.S. at 679.

To survive a Rule 12(b)(6) motion, the allegations in the complaint must meet a standard of "plausibility." Ashcroft v. Iqbal, 556 U.S. at 678; Bell Atl. Corp. v. Twombly, 550 U.S. 544, 564 (2007). A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Ashcroft v. Iqbal, 556 U.S. at 678. "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." Id.

II.    FLSA Overtime Claim

The FLSA requires employers to pay overtime wages to employees who work more than forty hours in a week. See 29 U.S.C. § 207. "Congress, however, has exempted a broad range of employees" from this overtime pay provision. Romero v. Flaum Appetizing Corp., 2009 WL 2591608, at *3 (S.D.N.Y. Aug. 17, 2009). One of these exemptions precludes application of FLSA's overtime pay requirements to certain motor carrier employees. See 29 U.S.C. § 213(b)(1). Defendants argue plaintiff falls within this Motor Carrier Exemption; therefore, plaintiff is not entitled to overtime pay.

The Motor Carrier Exemption, set forth in 29 U.S.C. § 213(b)(1) of the FLSA, states:

> b) The provisions of section 207 of this title [the overtime provisions] shall not apply with respect to—
>    (1) any employee with respect to whom the Secretary of Transportation has power to establish qualifications and maximum hours of service pursuant to the provisions of section 31502 of Title 49.

49 U.S.C. § 31502 provides:

> (b) Motor carrier and motor private carrier requirements.--The Secretary of Transportation may prescribe requirements for--
>    (1) qualifications and maximum hours of service of employees of, and safety of operation and equipment of, a motor carrier; and
>    (2) qualifications and maximum hours of service of employees of, and standards of equipment of, a motor private carrier, when needed to promote safety of

operation.

29 C.F.R. § 782.2 explains that for an employee to be exempt, (i) the employer must be "within the jurisdiction of the Secretary of Transportation by virtue of operating as a motor carrier or motor private carrier," as defined by 49 U.S.C. §§ 31502(b)(1) & (2), <u>Dauphin v. Chestnut Ridge Transp., Inc.</u>, 544 F. Supp. 2d 266, 273 (S.D.N.Y. 2008) (internal quotation marks omitted); and (ii) the employee must be "engaged in activities that affect the safety of operation of motor vehicles transporting property in interstate commerce." <u>McGuiggan v. CPC Int'l, Inc.</u>, 84 F. Supp. 2d 470, 480 (S.D.N.Y. 2000).

The Motor Carrier Exemption is "narrowly construed" against the party seeking to assert it, and its application is limited to instances that are "plainly and unmistakably within [its] terms and spirit." <u>Bilyou v. Dutchess Beer Distribs., Inc.</u>, 300 F.3d 217, 222 (2d Cir. 2002) (citing <u>Arnold v. Ben Kanowsky, Inc.</u>, 361 U.S. 388, 392 (1960)).  Moreover, the employer bears the burden of proving its employees fall within the exemption.  <u>Bilyou v. Dutchess Beer Distribs., Inc.</u>, 300 F.3d at 222.

A. <u>Motor Carrier Requirement</u>

Congress has changed the definition of "motor carrier" twice since plaintiff's employment commenced.  Although the parties correctly identify the Safe, Accountable, Flexible, Efficient Transportation Equity Act: a Legacy for Users Technical Corrections Act of 2008 ("SAFETEA-LU 2008"), Pub. L. No. 110–244, § 305(c), 122 Stat. 1572 (2008), as Congress's most recent definition, they fail to recognize that it does not apply retroactively to the overtime claims that occurred prior to its enactment in 2008.  <u>D'Arpa v. Runway Towing Corp.</u>, 2013 WL 3010810, at *8 (E.D.N.Y. June 18, 2013); <u>see also</u> <u>June-Il Kim v. SUK Inc.</u>, 2014 WL 842646, at *2-4 (S.D.N.Y. Mar. 4, 2014) (applying the August 2005 definition to plaintiff's

claims accruing between 2006 and 2008, and applying SAFETEA-LU 2008's definition to plaintiff's claims accruing between 2008 and 2010). In fact, none of Congress's previous definitions of motor carrier apply retroactively. See D'Arpa v. Runway Towing Corp., 2013 WL 3010810, at *8. Therefore, the Court must apply the different motor carrier definitions to the corresponding periods of plaintiff's employment: 2004 to August 10, 2005; August 10, 2005 to June 6, 2008; and June 6, 2008 to October 10, 2013.

From 2004 to August 10, 2005, a "motor carrier" was defined as "a person providing motor vehicle transportation for compensation." 49 U.S.C. § 13102(14) (2004). Accordingly, defendants, as operators of a shuttle bus service for compensation, are subject to the jurisdiction of the Secretary of Transportation for that time period.

In 2005, Congress amended Section 31502 to include only "commercial motor vehicles." June-Il Kim v. SUK Inc., 2014 WL 842646, at *3 (emphasis in original). Therefore, from August 10, 2005 to June 6, 2008, the Motor Carrier Exemption covered vehicles as defined by 49 U.S.C. §§ 31132(1)(A) & (B), or vehicles with "a gross vehicle weight of at least 10,001 pounds" or that were "designed or used to transport more than 8 passengers (including the driver) for compensation."

Defendants urge the Court to take judicial notice of the fact that plaintiff's shuttle bus weighed at least 10,001 pounds. In the alternative, defendants assert plaintiff's shuttle bus was "designed or used to transport more than eight [] passengers," and thus qualifies as a commercial motor vehicle for the relevant time period. (R. Mem. at 9).

The Court declines to take judicial notice of the bus's weight because it is not "generally known" and it cannot be "accurately and readily determined from sources whose accuracy cannot reasonably be questioned" that a shuttle bus weighs more than 10,000 pounds. Fed. R.

5

Evid. 201(b); see also Ajdin v. Bureau of Citizenship & Immigration Servs., 437 F.3d 261, 265 (2d Cir. 2006).  However, it is generally known that a "coach-style" bus can transport more than eight passengers.  (Compl. ¶ 13).  Therefore, defendants were commercial motor carriers from August 10, 2005, to June 6, 2008, and satisfy the motor carrier requirement for that time period.

On June 6, 2008, Congress restored the 2004 definition of motor carrier, but effectively retained the weight limitation and passenger count of commercial motor vehicles.  Pub. L. No. 110–244, §§ 305(c) & 306(c), 122 Stat. 1572 (2008); Casares v. Henry Limousine Ltd., 2009 WL 3398209, at *2 n.3 (S.D.N.Y. Oct. 21, 2009).  As already determined, defendants satisfy the 2004 definition of motor carrier, and the Court takes judicial notice of the fact that plaintiff's bus transported more than eight passengers for compensation.  Therefore, defendants satisfy the motor carrier requirement from June 6, 2008 to October 10, 2013.

In sum, applying the different motor carrier definitions to the corresponding periods of plaintiff's employment, defendants have established they operated as a motor carrier for the entirety of plaintiff's employment and are thus subject to the jurisdiction of the Department of Transportation.

  B. Interstate Commerce Requirement

In addition to meeting the motor carrier definition for the totality of plaintiff's employment, defendants must also establish plaintiff "engaged in activities that affect the safety of operation of motor vehicles transporting property in interstate commerce" in order for plaintiff to be exempt.  McGuiggan v. CPC Int'l, Inc., 84 F. Supp. 2d 470, 480 (S.D.N.Y. 2000).  The parties do not dispute bus drivers, like plaintiff, directly affect the safety of operation of motor vehicles.  Thus, the issue before the Court is whether plaintiff engaged in activities that are a part of interstate commerce.

"[T]he interstate commerce requirement is satisfied if the goods being transported within the borders of one State are involved in a practical continuity of movement in the flow of interstate commerce."  Bilyou v. Dutchess Beer Distribs., Inc., 300 F.3d at 223 (internal quotation marks omitted).[3]  Whether a particular portion of travel is involved in a practical continuity of interstate movement "depends upon the essential character of the movement."  Baltimore & Oh. Sw. R.R. Co. v. Settle, 260 U.S. 166, 170 (1922); Bilyou v. Dutchess Beer Distribs., Inc., 300 F.3d at 223-24.

Plaintiff's bus route did not take him across state lines.  Therefore, defendants must show plaintiff's intrastate transportation of passengers was part of a practical continuity of movement in the flow of interstate commerce to fall within the exemption.  Defendants contend this requirement is satisfied because: (i) plaintiff transported people to and from the Stewart International Airport[4]; (ii) plaintiff's "route included stops at the park and ride location on New

---

[3]    Although the Second Circuit has only addressed continuity of movement as it relates to the transportation of goods, the Court will apply the same reasoning to the transportation of passengers, while keeping an eye towards the "practical considerations" differentiating the two.  Packard v. Pittsburgh Transp. Co., 418 F.3d 246, 256 (3d Cir. 2005) (quoting United States v. Yellow Cab Co., 332 U.S. 218, 231 (1947), overruled on other grounds by Copperweld Corp. v. Independence Tube Corp., 467 U.S. 752 (1984)).

[4]    In his complaint, plaintiff alleges he transported passengers "to and from a park and ride location in Newburgh, New York, and the Beacon Metro-North train station."  (Compl. ¶ 16).  In his opposition to the motion to dismiss, plaintiff states he operated a "shuttle bus that required him to transport passengers to and from a park and ride location . . . and the Beacon, New York Metro-North train station, Stewart International Airport and downtown Newburgh."  (Opp. at 1).
   In deciding a motion to dismiss, a court is limited to the "facts and allegations that are contained in the complaint and in any documents that are either incorporated into the complaint by reference or attached to the complaint as exhibits."  Blue Tree Hotels Inv. (Canada), Ltd. v. Starwood Hotels & Resorts Worldwide, Inc., 369 F.3d 212, 217 (2d Cir. 2004).  Accordingly, despite defendants' focus on the routes to and from Stewart International Airport, the Court's inquiry is necessarily confined to the route alleged in the complaint.  Thus, whether trips to and from Stewart International Airport satisfy the interstate commerce requirement is not relevant to the instant motion.

York State Route 17K"; and (iii) plaintiff transported passengers to and from the Metro-North train station.  (Pl. Mem. at 20).

The Court is unpersuaded by defendants' arguments.

Defendants are correct plaintiff transported passengers to and from locations that allowed passengers to continue their journeys interstate.  But, a traveler begins an interstate journey "when he boards the train at the station" and ends it "when he disembarks" at his destination.  United States v. Yellow Cab Co., 332 U.S. at 231-32.  Anything that happens "prior or subsequent to that [] journey, at least in the absence of some special arrangement," is not a part of the interstate movement.  Id. at 232.[5]  Defendants have not alleged a special arrangement or contracted relationship between them and the park and ride or Metro-North, and in the absence thereof, plaintiff's route is "quite distinct and separate" from any passenger's interstate journey.  Id.  To put it another way, the essential character of plaintiff's intrastate transportation is not part of a continuity of interstate movement because the intrastate travel of plaintiff's passengers "bear[s] only a casual and incidental relationship to interstate transit."  Margulies v. Tri-Cnty. Metro. Transp. Dist. of Or., 2013 WL 5593040, at *9 (D. Or. Oct. 10, 2013) (citing U.S. v. Yellow Cab, 332 U.S. at 231); see also Packard v. Pittsburgh Transp. Co., 418 F.3d 246, 258 (3d Cir. 2005).

---

[5]     In Yellow Cab, the Supreme Court noted, "[w]hen persons or goods move from a point of origin in one state to a point of destination in another, the fact that a part of that journey consists of transportation by an independent agency solely within the boundaries of one state does not make that portion of the trip any less interstate in character."  U.S. v. Yellow Cab, 332 U.S. at 228.  However, the Court applied this reasoning to contracted transport between Chicago railroad stations, which allowed passengers disembarking at one station to travel to a station a few miles away and board another train to complete their journey.  Id.  When discussing non-contracted taxicab transport from a passenger's home to the station, the Court employed the reasoning above and found this travel only had a "casual and incidental" relationship to interstate travel.  Id. at 230-31.

.
.

Defendants argue intrastate transportation can be a part of a practical continuity of interstate movement without a common arrangement between the intra and interstate carriers. For example, in United States v. Capital Transit Co., the Supreme Court concluded local bus drivers were part of a continuous stream of interstate travel without a common arrangement because many passengers used the intrastate service as part of their interstate journey. 338 U.S. 286, 288-90 (1949). And in Marshall v. Victoria Transp. Co., the Fifth Circuit found "every bus route of each defendants' company carries a substantial percentage of international travelers every day," thus, "their work was entwined with a continuous stream of international travel." 603 F.2d 1122, 1124-25 (5th Cir. 1979). The aforementioned cases, however, relied upon the percentage of passengers utilizing an intrastate service to travel interstate in order to find a continuous flow of interstate movement. Here, the parties have presented no evidence regarding the percentage of passengers who utilized plaintiff's bus to commence or terminate interstate travel. Without this information, it would be inappropriate to conclude plaintiff's wholly intrastate transportation is part of a continuous flow of interstate movement.

Defendants contend "the amount of interstate commerce itself need not be great," and therefore, plaintiff's intrastate activities are enough to constitute a practical continuity of movement regardless of the percentage of passengers who used the bus to begin or end interstate travel. (R. Br. at 5). Defendants are correct the amount of interstate commerce need not be great. See Morris v. McComb, 332 U.S. 422, 432-33 (1947) (finding a cartage business transporting 4% of its products across state lines met a "de minimus" interstate commerce requirement, and therefore engaged in continuous interstate movements). But again, neither party has presented any evidence that even a small portion of plaintiff's passengers used the Metro-North train or park and ride to travel interstate. Determination of the applicability of the

9

motor carrier exemption "requires a detailed, fact-specific inquiry." Romero v. Flaum Appetizing Corp., 2011 WL 812157, at *4 (S.D.N.Y. Mar. 1, 2011); see also Perez v. Time Moving & Storage Inc., 2008 WL 5662070, at *2 (S.D.N.Y. Jan. 15, 2008) ("[A]s long as the facts pleaded about their job duties render it plausible that plaintiffs fall outside the [motor carrier] exemption, the complaint cannot be dismissed."). In the absence of any fact-specific evidence showing the percentage of passengers that used plaintiff's bus as the first or last step of their interstate journey, the Court declines to conclude plaintiff's intrastate route constituted a practical continuity of interstate movement.

Defendants, therefore, have not carried their burden of showing plaintiff engaged in activities affecting the safety of operation of motor vehicles transporting property in interstate commerce. At this early stage in the proceedings, the motor carrier exemption does not "plainly and unmistakably" apply, and accordingly, the motion to dismiss plaintiff's federal overtime pay claim is denied. Bilyou v. Dutchess Beer Distribs., Inc., 300 F.3d at 222.

III.   NYLL Overtime Claim

Plaintiff also alleges an identical overtime claim under 12 N.Y.C.R.R. § 142-2.2. Section 142-2.2 is the New York equivalent of the FLSA and provides an employer's overtime obligations are subject to the federal Motor Carrier Exemption set out in 29 U.S.C. § 213(b)(1). 12 N.Y.C.R.R. § 142-2.2; see also Dauphin v. Chestnut Ridge Transp., Inc., 544 F. Supp. 2d 266, 277 (S.D.N.Y. 2008). Accordingly, for the same reasons the motion to dismiss is denied with respect to plaintiff's FLSA overtime claim, the motion to dismiss plaintiff's state law claim for overtime pay is also denied.

IV.     Failure to Provide Rest and Lunch Breaks

Plaintiff also alleges defendants failed to provide him with rest and lunch breaks.  It is unclear under what provision of law plaintiff asserts this claim.

The FLSA does not require employers to provide rest or lunch breaks to their employees.  See Gordon v. Kaleida Health, 299 F.R.D. 380, 395 (W.D.N.Y. 2014); see also U.S. Dept. of Labor Wage and Hour Division, Handy Reference Guide to the Fair Labor Standards Act, at 1 (WH Publication 1282, rev.'d Apr. 2011), available at www.dol.gov/whd/regs/compliance/wh1282.pdf.  However, NYLL § 162 requires employers to provide employees with meal periods.  See also 29 C.F.R. § 785.19.  As such, plaintiff has plausibly alleged a violation of NYLL, Section 162 and defendant's motion to dismiss this claim is denied.

## CONCLUSION

Defendants' motion to dismiss is DENIED as to plaintiff's FLSA and NYLL overtime claims, DENIED as to plaintiff's NYLL claim for failure to provide rest and lunch breaks, and GRANTED as to plaintiff's FLSA claim for failure to provide lunch breaks.

The Clerk is instructed to terminate the pending motion.  (Doc. #8).

Dated: December 4, 2014
       White Plains, NY

SO ORDERED:

*[signature]*

Vincent L. Briccetti
United States District Judge